LAUREN GALLO WHITE, State Bar No. 309075
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone:    (415) 947-2000
Facsimile:    (415) 947-2099
Email:  lwhite@wsgr.com

MENG JIA YANG, State Bar No. 311859
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone:    (650) 493-9300
Facsimile:    (650) 565-5100
Email:  mjyang@wsgr.com

Attorneys for Defendant
GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| AMBASSADOR MARC GINSBERG and COALITION FOR A SAFER WEB, <br><br> Plaintiffs, <br><br> v. <br><br> GOOGLE LLC, <br><br> Defendant. | CASE NO.:  5:21-CV-00570-BLF <br><br> **GOOGLE LLC'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** <br><br> Date:        December 16, 2021 <br> Time:        9:00AM <br> Place:       Courtroom 3, 5th Floor <br> Before:      Judge Beth Labson Freeman |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS ............................................................... 1

STATEMENT OF REQUESTED RELIEF ........................................................................... 1

STATEMENT OF ISSUES ................................................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................ 1

FACTUAL & PROCEDURAL BACKGROUND ................................................................... 3

ARGUMENT ................................................................................................................... 5

I.   SECTION 230 BARS PLAINTIFFS' STATE LAW CLAIMS ........................................ 5

    A.   Plaintiffs Seek to Treat Google as a Publisher of Information Provided by Another Information Content Provider ................................................................. 6

II.   PLAINTIFFS FAIL TO STATE A VIABLE CLAIM FOR RELIEF ............................... 8

    A.   Plaintiffs Lack the Standing Required to Bring a UCL Claim ............................... 8

    B.   Plaintiffs Have No Viable Claim for Negligent Infliction of Emotional Distress ............................................................................................................. 11

        1.   Plaintiffs Fail to Allege An Applicable Duty ............................................. 12

        2.   Plaintiffs Fail to Allege Proximate Causation ............................................ 14

III.   PLAINTIFFS SHOULD NOT BE GIVEN FURTHER LEAVE TO AMEND .............. 15

CONCLUSION ............................................................................................................... 15

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

### CASES

4 *Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......................................................................................... 5
5

*Backhaut v. Apple., Inc.*,
6 74 F. Supp. 3d 1033 (N.D. Cal. 2014) ........................................................... 11

7 *Barnes v. Yahoo!, Inc.*,
570 F.3d 1096 (9th Cir. 2009).......................................................................... 6, 7
8

*Batzel v. Smith*,
9 333 F.3d 1018 (9th Cir. 2003).......................................................................... 6

10 *Beckman v. Match.com, LLC*,
2017 WL 1304288 (D. Nev. Mar. 10, 2017),
11 *aff'd*, 743 F. App'x 142 (9th Cir. 2018) ......................................................... 13

12 *Bennett v. Google, LLC*,
882 F.3d 1163 (D.C. Cir. 2018) ...................................................................... 7, 8
13

*Birdsong v. Apple, Inc.*,
14 590 F.3d 955 (9th Cir. 2009)............................................................................ 9, 10

15 *Carney v. Rotkin, Schmerin and McIntyre*,
206 Cal. App. 3d 1513 (1988) ......................................................................... 12
16

*Carter v. Rasier-CA, LLC*,
17 2017 WL 4098858 (N.D. Cal. Sept. 15, 2017),
*aff'd*, 724 F. App'x 586 (9th Cir. 2018) ......................................................... 13
18

*Clark v. Cty. of Tulare*,
19 755 F. Supp. 2d 1075 (E.D. Cal. 2010) ........................................................... 13

20 *Coffee v. Google, LLC*,
2021 WL 493387 (N.D. Cal. Feb. 10, 2021)................................................... *passim*
21

*Doe v. Internet Brands, Inc.*,
22 824 F.3d 846 (9th Cir. 2016) ............................................................................ 5

23 *Doe v. MySpace, Inc.*,
528 F.3d 413 (5th Cir. 2008)............................................................................ 7
24

*Dyroff v. Ultimate Software Grp., Inc.*,
25 934 F.3d 1093 (9th Cir. 2019)......................................................................... *passim*

26 *Ess v. Eskaton Props.*,
97 Cal. App. 4th 120 (Cal. App. 2002) ........................................................... 11, 12
27

*Fair Hous. Council v. Roommates.com, LLC*,
28 521 F.3d 1157 (9th Cir. 2008) (en banc)......................................................... 2, 6, 7, 15

*Fayer v. Vaughn*,
    649 F.3d 1061 (9th Cir. 2011) ................................................................. 5

*Ginsberg v. Apple, Inc.*,
    No. 5:21-cv-00425-EJD (Jan. 17, 2021) ................................................. 5

*Green v. Am. Online (AOL)*,
    318 F.3d 465 (3d Cir. 2003) ................................................................... 7

*Hall v. Time Inc.*,
    158 Cal. App. 4th 847 (Cal. Ct. App. 2008) ...................................... 9, 11

*Hawkins v. Kroger Co.*,
    906 F.3d 763 (9th Cir. 2018) ................................................................. 9

*Herrick v. Grindr, LLC*,
    306 F. Supp. 3d 579 (S.D.N.Y. 2018),
    *aff'd*, 765 F. App'x 586 (2d Cir. 2019) ............................................. 14

*Huggins v. Longs Drug Stores Cal., Inc.*,
    6 Cal. 4th 124 (Cal. 1993) ................................................................... 11

*Kimzey v. Yelp! Inc.*,
    836 F.3d 1263 (9th Cir. 2016) ........................................................... 6, 7

*Klayman v. Zuckerberg*,
    753 F.3d 1354 (D.C. Cir. 2014) ..................................................... 6, 7, 8

*Kwikset Corp. v. Super. Ct.*,
    51 Cal. 4th 310 (2011) ...................................................................... 2, 9

*Perfect 10, Inc. v. CCBill LLC*,
    488 F.3d 1102 (9th Cir. 2007) ............................................................... 6

*Pet Food Express Ltd. v. Applied Underwriters, Inc.*,
    2019 WL 4318584 (E.D. Cal. Sept. 12, 2019) ...................................... 9

*Potter v. Firestone Tire & Rubber Co.*,
    6 Cal. 4th 965 (1993) .......................................................................... 12

*Prager Univ. v. Google LLC*,
    2018 WL 1471939 (N.D. Cal. Mar. 26, 2018),
    *aff'd*, 951 F.3d 991 (9th Cir. 2020) ..................................................... 5

*Wanetick v. Mel's of Modesto, Inc.*,
    811 F. Supp 1402 (N.D. Cal. 1992) .............................................. 12, 14

*Williams v. Apple*,
    449 F. Supp. 3d 892 (N.D. Cal. 2020) ................................................. 9

**STATUTES**

47 U.S.C. § 230(c) .................................................................................... 1

47 U.S.C. § 230(c)(1) ..................................................................... *passim*

Cal. Bus. & Prof. Code § 17200...............................................................................*passim*

Cal. Bus. & Prof. Code § 17204........................................................................................ 9

## RULES

Fed. R. Civ. P. 12(b)(6) ........................................................................................... 1, 5, 6

## NOTICE OF MOTION AND MOTION TO DISMISS

**PLEASE TAKE NOTICE** that on December 16, 2021 at 9:00AM, in the United States District Courthouse, Courtroom 3, 5th Floor, 280 South 1st Street, San Jose, CA 95113, before the Honorable Beth Labson Freeman, Defendant Google LLC ("Defendant" or "Google") will, and hereby does, move this Court pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing with prejudice the First Amended Complaint brought by Plaintiffs Marc Ginsberg ("Ginsberg") and the Coalition for a Safer Web ("CSW").

The motion is based upon this Notice of Motion and Motion; the Memorandum of Points and Authorities in support thereof; the Proposed Order filed concurrently herewith; the pleadings, records, and papers on file in this action; oral argument of counsel; and any other matters properly before the Court.

## STATEMENT OF REQUESTED RELIEF

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and 47 U.S.C. § 230(c), Google requests that the Court dismiss with prejudice Plaintiffs' claims for violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, and negligent infliction of emotional distress.

## STATEMENT OF ISSUES

1.      Whether Section 230 of the Communications Decency Act ("CDA"), 47 U.S.C. § 230(c)(1), bars Plaintiffs' claims.

2.      Whether Plaintiffs' First Amended Complaint should otherwise be dismissed under Rule 12(b)(6) for failure to state a claim.

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs Ambassador Marc Ginsberg and the organization he founded, the Coalition for a Safer Web, assert that several of Telegram's 500 million third-party users have used Telegram to send messages that contain hateful rhetoric or promote extremism. Plaintiffs have apparently not made any effort to pursue claims against Telegram or its users. Instead, Plaintiffs seek to hold Google liable based on its role as the operator of Google Play, an online platform where users can download applications, including Telegram. Plaintiffs do not allege that Google played any role

1  in creating, contributing to, or moderating content on Telegram. Plaintiffs nevertheless assert that

2  Google should have removed the Telegram app from Google Play, and that it violated

3  California's Unfair Competition Law ("UCL") and negligently inflicted emotional distress on

4  Plaintiffs by failing to do so. While Plaintiffs' goals of combating anti-Semitism and hate speech

5  are laudable, they have chosen the wrong target for their lawsuit.

6      As an initial matter, Plaintiffs' claims run directly into Section 230 of the

7  Communications Decency Act ("Section 230"). Section 230 "[was] enacted to protect websites

8  against the evil of liability for failure to remove offensive content." *Fair Hous. Council v.*

9  *Roommates.com, LLC*, 521 F.3d 1157, 1174 (9th Cir. 2008) (en banc). That is precisely what

10 Plaintiffs seek to do here. Their claims all turn on Google's failure to remove the Telegram app

11 from Google Play. This Court recently dismissed an analogous case under Section 230, finding

12 that "Google cannot be held liable for merely allowing [app] developers to provide apps to users

13 through the Google Play Store, as 'providing third parties with neutral tools to create web content

14 is considered to be squarely within the protections of § 230.'" *Coffee v. Google, LLC*, 2021 WL

15 493387, at *8 (N.D. Cal. Feb. 10, 2021) (Freeman, J.) (citation omitted). The same result is

16 required here.

17      Even apart from Section 230, however, Plaintiffs' Amended Complaint still fails to state a

18 claim. *First*, Plaintiffs' UCL claim fails for lack of standing. Such a claim requires economic

19 injury, specifically "lost money or property," resulting from the alleged misconduct. *Kwikset*

20 *Corp. v. Super. Ct.*, 51 Cal. 4th 310, 325-26 (2011). But Plaintiffs have alleged no such injury:

21 Ginsberg asserts that his phone lost value but cannot explain how Telegram's mere availability on

22 Google Play could have caused that loss in value. Indeed, Ginsberg does not even allege that he

23 downloaded Telegram from Google Play or ever used the app on his phone.

24      *Second*, Plaintiffs' claim for negligent infliction of emotional distress ("NIED") fails

25 because, under established Ninth Circuit law, online platforms like Google Play do not owe a

26 duty of care to users. *See Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1100-01 (9th Cir.

27 2019). Plaintiffs also have not alleged proximate causation: the Amended Complaint does nothing

28 to plausibly tie the fear Ginsberg claims to have felt as a result of content on Telegram to

1   Google's decision to host the app on Google Play.

2          Whether under Section 230 or on their own terms (or both), therefore, Plaintiffs' claims

3   should be dismissed. And Plaintiffs should not receive another opportunity to amend. Plaintiffs

4   amended their complaint in response to Google's first motion to dismiss, but the changes were

5   superficial: they did not address Section 230 at all or offer any new facts that make any difference

6   on the merits of their claims. *See* Ex. 1 (comparison showing amendments in First Amended

7   Complaint ("FAC") relative to original complaint). In short, Plaintiffs failed to address the

8   deficiencies that Google outlined both in its initial motion to dismiss and in a letter that Google

9   sent to Plaintiffs nearly a month before filing its motion that previewed Google's defenses. Ex. 2

10  (03/26/2021 Letter from L. White to K. Altman). In light of all that, it is fair to understand the

11  current version of the complaint as Plaintiffs' best articulation of their claims. Dismissal therefore

12  should be with prejudice.

13                     **FACTUAL & PROCEDURAL BACKGROUND**

14         Google is a provider of interactive computer services, including its search engine and

15  Google Play. ¶ 10. (Citations to "¶ _" are to the corrected FAC. ECF No. 19.) Google Play is an

16  online platform and marketplace from which users can download a wide variety of apps to their

17  mobile devices. *Id.* Before being included on Google Play, apps must undergo a review process,

18  must agree to Google's established terms of use, and must comply with Google's policies and

19  guidelines. ¶¶ 25-27. Google has "full managerial discretion to remove apps that violate [its]

20  guidelines." ¶ 95.

21         One of the apps that is available for download in Google Play is Telegram, a popular

22  third-party messaging app. ¶ 30. The app allows users to exchange messages and other content,

23  and uses encryption to protect the privacy of user communications. ¶¶ 30-36. Telegram maintains

24  policies for regulating content or activity on its platform and may remove content that violates its

25  policies. ¶¶ 37-40. The FAC identifies various examples of user content allegedly disseminated

26  through Telegram that Plaintiffs describe as reflecting hate speech, racism, anti-Semitism, or

27  incitement of violence. ¶¶ 51-71.

28

1   Plaintiff Ginsberg created the Coalition for a Safer Web "to compel social media

2   platforms to end their tolerance of anti-Semitism and their enabling of extremist groups to operate

3   with impunity over social media." ¶ 8. He allegedly owns a Samsung Galaxy Express smartphone

4   running the Android operating system for personal and professional use. ¶ 4. While Android

5   devices can download apps from Google Play, Ginsberg does not allege that he ever downloaded

6   the Telegram app to his smartphone (whether via Google Play or through some other means)—or

7   that he ever accessed Telegram, whether through a web browser or through the app. Nor does he

8   allege that he actually viewed the user content described in the FAC.

9   Based on these allegations, Plaintiffs assert two claims against Google, one arising under

10  the unlawful and unfair prongs of the UCL and the other for negligent infliction of emotional

11  distress. To support the emotional distress claim, Ginsberg notes that he "is a Jewish person

12  whose professional work requires him to maintain a presence in the public eye." ¶ 81. According

13  to the FAC, the anti-Semitic and other objectionable content on Telegram has caused him to "live

14  in apprehension of religiously motivated violence being perpetrated against him," which has in

15  turn "caused him substantial emotional harm, including depression and anxiety." ¶¶ 83-84.

16  Plaintiffs further assert that Ginsberg "is aware that Telegram is used to incite violence and was

17  terrified for his safety during the Capitol riots of January 2021." ¶ 82.

18  In addition, Ginsberg claims to have suffered damages "through his purchase of his

19  Samsung [phone]" or from "being deprived of a key benefit of the purchase and use of" his

20  phone. ¶¶ 13, 107. In his words, "[a] portion of the cost of the Samsung Galaxy Express was

21  related to the benefits provided under the terms of service and policies of Google." ¶ 103. While

22  Plaintiff CSW is allegedly responsible for reimbursing Ginsberg for his professional use of his

23  Samsung Galaxy Express (¶ 9), the FAC does not suggest that CSW was in any way affected by

24  any content allegedly disseminated on Telegram. At the heart of Plaintiffs' claims is the assertion

25  that Google should have removed the Telegram app from Google Play as a means of

26  "compel[ling] Telegram to improve its content moderation policies." ¶ 49. To that end, Plaintiffs

27  seek to enjoin Google from making Telegram available on Google Play. FAC, Prayer for Relief.

28

1    Around the same time that Plaintiffs sued Google, they filed a nearly identical complaint

2    against Apple. Compl., *Ginsberg v. Apple, Inc.*, No. 5:21-cv-00425-EJD (Jan. 17, 2021). There,

3    Ginsberg claims to own an Apple iPhone and complains about Telegram's presence on Apple's

4    App Store. *Id.* ¶¶ 4, 28. The factual allegations and causes of action against Apple are otherwise a

5    close copy of those Plaintiffs assert against Google. There is no indication that Plaintiffs have

6    brought any claims directly against Telegram or any of the users who created the content

7    described in the FAC.

8    Google filed a motion to dismiss the original complaint on April 22, 2021. ECF No. 14.

9    Instead of opposing the motion to dismiss, Plaintiffs filed an amended complaint with minimal

10   changes on June 8, 2021. ECF No. 17; *see* Ex. 1. Plaintiffs filed a corrected amended complaint

11   on June 11, 2021 that changed the named party from "Google, Inc.," which was incorrect, to

12   "Google LLC." ECF No. 19.

13                                        **ARGUMENT**

14   To survive a motion under Rule 12(b)(6), "[t]hreadbare recitals of the elements of a cause

15   of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S.

16   662, 678 (2009). Instead, Plaintiffs must allege "factual content that allows the court to draw the

17   reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court is not

18   required to "assume the truth of legal conclusions merely because they are cast in the form of

19   factual allegations." *Prager Univ. v. Google LLC*, 2018 WL 1471939, at *3 (N.D. Cal. Mar. 26,

20   2018), *aff'd*, 951 F.3d 991 (9th Cir. 2020) (quoting *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th

21   Cir. 2011)).

22   **I.      SECTION 230 BARS PLAINTIFFS' STATE LAW CLAIMS**

23   Section 230(c)(1) states that "[n]o provider or user of an interactive computer service shall

24   be treated as the publisher or speaker of any information provided by another information content

25   provider." 47 U.S.C. § 230(c)(1). This provision "protects websites from liability under state or

26   local law for material posted on their websites by someone else." *Dyroff*, 934 F.3d at 1097

27   (quoting *Doe v. Internet Brands, Inc.*, 824 F.3d 846, 850 (9th Cir. 2016)). In enacting this

28   provision, Congress recognized that "[m]aking interactive computer services and their users liable

1    for the speech of third parties would severely restrict the information available on the Internet."

2    *Batzel v. Smith*, 333 F.3d 1018, 1027-28 (9th Cir. 2003).

3            Courts have applied this provision "'to establish broad federal immunity to any cause of

4    action that would make service providers liable for information originating with a third-party user

5    of the service.'" *Coffee*, 2021 WL 493387 at *4 (quoting *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d

6    1102, 1118 (9th Cir. 2007)). As this Court has explained, "the immunity extends to *all* claims

7    stemming from an interactive computer service provider's publication of content created by third

8    parties." *Id*. at *4. And because Section 230 is meant to protect "not merely from ultimate

9    liability, but from having to fight costly and protracted legal battles," *Roommates*, 521 F.3d at

10   1175, it is well settled that Section 230(c)(1) is a proper basis for dismissing claims under Rule

11   12(b)(6). *See, e.g.*, *Coffee*, 2021 WL 493387 at *8 (granting motion to dismiss under Section

12   230(c)(1)); *see also Kimzey v. Yelp! Inc*., 836 F.3d 1263, 1266 (9th Cir. 2016) (affirming grant of

13   motion to dismiss under Section 230(c)(1)); *Klayman v. Zuckerberg*, 753 F.3d 1354, 1357 (D.C.

14   Cir. 2014) (explaining that dismissal under Section 230 is proper when "the statute's barrier to

15   suit is evident from the face of the complaint").

16   **A.    Plaintiffs Seek to Treat Google as a Publisher of Information Provided by
             Another Information Content Provider**

17

18           There is an established three-part test for application of Section 230(c)(1). "Immunity

19   from liability exists for '(1) a provider or user of an interactive computer service (2) whom a

20   plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of

21   information provided by another information content provider.' When a plaintiff cannot allege

22   enough facts to overcome Section 230 immunity, a plaintiff's claims should be dismissed."

23   *Dyroff*, 934 F.3d at 1097 (quoting *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100 (9th Cir. 2009)).

24   All three elements are readily met here.

25           *First*, Google is the provider of an interactive computer service. Plaintiffs acknowledge as

26   much in alleging that Google is engaged in the "distribution of applications on the Google Play

27   Store." ¶ 12; *accord Coffee*, 2021 WL 493387, at *5 (finding that Google is an interactive

28   computer service in connection with its operation of Google Play); *Dyroff*, 934 F.3d at 1097

GOOGLE'S NOTICE OF MOTION AND MOTION          -6-          CASE NO.:  5:21-cv-00570-BLF
TO DISMISS FIRST AMENDED COMPLAINT

1    (explaining that "[w]e interpret the term 'interactive computer service' expansively" and that

2    "[w]ebsites are the most common interactive computer services").

3           *Second*, Plaintiffs' claims treat Google as the publisher or speaker of the allegedly

4    unlawful content. In determining whether a plaintiff's claims treat an interactive computer service

5    as a publisher, "courts must ask whether the duty that the plaintiff alleges the defendant violated

6    derives from the defendant's status or conduct as a 'publisher or speaker.' If it does, section

7    230(c)(1) precludes liability." *Barnes*, 570 F.3d at 1101-02. As this Court has explained,

8    "[p]ublication includes 'any activity that can be boiled down to deciding whether to exclude

9    material that third parties seek to post online.'" *Coffee*, 2021 WL 493387 at *6 (quoting

10   *Roommates*, 521 F.3d at 1170-71); *accord Barnes*, 570 F.3d at 1102 ("[P]ublication involves

11   reviewing, editing, and deciding whether to publish or to withdraw from publication third-party

12   content.").

13          Here, Plaintiffs plainly seek to hold Google liable as a publisher of apps on Google Play

14   (and, indirectly, of the content exchanged through those apps). The essence of Plaintiffs' claims is

15   that Google should have removed (that is, ceased publishing) the Telegram app, or that it should

16   have used the threat of removal to force Telegram to more aggressively monitor or police user

17   messages on its app. ¶¶ 47, 85-88. These claims target "the very essence of publishing"— *i.e.*

18   "making the decision whether to print or retract a given piece of content." *Klayman*, 753 F.3d at

19   1359; *accord Kimzey*, 836 F.3d at 1268 ("Kimzey's claims are premised on Yelp's publication of

20   Sarah K's statements and star rating. In other words, the claim is directed against Yelp in its

21   capacity as a publisher or speaker."); *Barnes*, 570 F.3d at 1103 ("[R]emoving content is

22   something publishers do, and to impose liability on the basis of such conduct necessarily involves

23   treating the liable party as a publisher of the content it failed to remove"); *Bennett v. Google,*

24   *LLC*, 882 F.3d 1163, 1168 (D.C. Cir. 2018) ("the decision to print or retract is fundamentally a

25   publishing decision for which the CDA provides explicit immunity"); *Doe v. MySpace, Inc.*, 528

26   F.3d 413, 420 (5th Cir. 2008) (Section 230 precludes liability for "decisions relating to the

27   monitoring, screening, and deletion of content") (quoting *Green v. Am. Online (AOL)*, 318 F.3d

28   465, 471 (3d Cir. 2003)).

1    *Third*, Plaintiffs' claims are overtly based on information provided by another content

2    provider.  Indeed, there are *two* distinct layers of content provided by third parties in this case: the

3    Telegram app itself and the allegedly harmful or offensive speech posted by users of Telegram.

4    *See* ¶¶ 29-42 (describing Telegram's Terms of Service and Moderation policies); ¶¶ 48-70

5    (describing posts on Telegram). But none of this alleged content—neither the Telegram app itself

6    nor any of the messages exchanged through it—is alleged to have been created or developed by

7    Google. *See, e.g.*, *Dyroff*, 934 F.3d at 1098 ("The third prong is also met because … the content at

8    issue was created and developed by [third parties]"); *Bennett*, 882 F.3d at 1167 ("Bennett alleges

9    that only Pierson—and not Google—created the offensive content on the blog."); *Klayman*, 753

10   F.3d at 1358 ("[T]he complaint nowhere alleges or even suggests that Facebook provided,

11   created, or developed any portion of the content that Klayman alleges harmed him").

12   This Court recently applied Section 230 to bar a similar set of claims arising from

13   Google's alleged failure to remove third-party apps from Google Play. *Coffee*, 2021 WL 493387,

14   at *6. The plaintiffs there alleged that Google violated state consumer protection laws by

15   publishing certain video game apps in Google Play. The Court dismissed the claims as a matter of

16   law, explaining that, because plaintiffs "[sought] an order requiring Google to screen apps offered

17   through its Google Play store and exclude those containing [certain content]," they were

18   demanding that Google engage in "conduct that [was] squarely within the role of a publisher." *Id*.

19   So too here: "Google cannot be held liable for merely allowing [] developers to provide apps to

20   users through the Google Play store, as 'providing third parties with neutral tools to create web

21   content is considered to be squarely within the protections of § 230.'" *Id*. at *8.

22   **II.       PLAINTIFFS FAIL TO STATE A VIABLE CLAIM FOR RELIEF**

23   Even apart from Section 230, Plaintiffs' causes of action—under the UCL and for

24   NIED—fail to state a viable claim.

25           **A.       Plaintiffs Lack the Standing Required to Bring a UCL Claim**

26   Plaintiff's UCL claim is based on the theory that Google's decision not to remove the

27   Telegram app from Google Play somehow amounted to an unlawful or unfair business practice.

28   ¶¶ 90-121. While there is no plausible allegation of illegality or unfairness, this claim fails most

1 obviously for lack of the economic injury that the UCL requires. "A private person has statutory

2 standing under the UCL only if he or she 'has suffered injury in fact and has ***lost money or***

3 ***property as a result of the unfair competition***.'" *Coffee*, 2021 WL 493387, at *8 (emphasis

4 added) (quoting Cal. Bus. & Prof. Code § 17204); *see also Hawkins v. Kroger Co.*, 906 F.3d 763,

5 768 (9th Cir. 2018) (citation omitted) ("A plaintiff is required to show 'some form of economic

6 injury' as a result of his transactions with the defendant."); *Birdsong v. Apple, Inc*., 590 F.3d 955,

7 960 (9th Cir. 2009) ("[T]o plead a UCL claim, the plaintiffs must show, consistent with Article

8 III, that they suffered a distinct and palpable injury as a result of the alleged unlawful or unfair

9 conduct."). To establish statutory standing, a complaint must allege facts showing both economic

10 injury and causation. *Coffee*, 2021 WL 493387, at *9.

11        That Plaintiffs may have spent money on Ginsberg's phone is not enough for standing.

12 *See, e.g., Hall v. Time Inc.*, 158 Cal. App. 4th 847, 855 (Cal. Ct. App. 2008) (no economic injury

13 under the UCL where plaintiff merely alleged that he paid for a book and received a book in

14 exchange); *Pet Food Express Ltd. v. Applied Underwriters, Inc.*, 2019 WL 4318584, at *4 (E.D.

15 Cal. Sept. 12, 2019) ("A purchase or transaction where the person paid with money, without

16 more, does not constitute a loss" for UCL standing); *accord Birdsong*, 590 F.3d at 961-62 (no

17 UCL standing even though plaintiffs purchased allegedly defective product from defendant

18 Apple). Instead, Plaintiffs need to plausibly allege that Google's allegedly unlawful or unfair

19 conduct caused Ginsberg to pay for something he did not receive or make a purchase he would

20 otherwise not have made. *Kwikset*, 246 P.3d at 885; *accord Birdsong*, 590 F.3d at 960 (UCL

21 plaintiffs must allege that "they suffered a distinct and palpable injury ***as a result of*** the alleged

22 unlawful or unfair conduct") (emphasis added); *accord Williams v. Apple*, 449 F. Supp. 3d 892,

23 914 (N.D. Cal. 2020) (finding no UCL standing where plaintiffs failed to show that "in [the]

24 absence [of alleged misrepresentations], [they] in all reasonable probability would not have

25 engaged in the injury-producing conduct") (citation omitted). But the FAC does nothing like that.

26        To begin, Ginsberg does not suggest that he bought his Samsung Galaxy Express phone

27 from Google—or that he downloaded any app, including Telegram, from Google Play, much less

28 that he paid Google any money to do so. ¶ 4. Ginsberg vaguely refers to the "purchase [of]

GOOGLE'S NOTICE OF MOTION AND MOTION        -9-        CASE NO.:  5:21-cv-00570-BLF
TO DISMISS FIRST AMENDED COMPLAINT

Google products" (¶ 106), but the FAC does not identify anything that he actually bought from Google, much less explain the connection of any such purchase to his claims. Nor does CSW, which did nothing other than allegedly agree to "reimburse[]" Ginsberg for his "professional use" of his phone. ¶ 9.

Instead, Plaintiffs' theory of economic injury is the vague suggestion that Ginsberg was somehow "deprived of a key benefit of the purchase and use of the Samsung Galaxy Express," which he bought from a third party. ¶ 107. Plaintiffs claim that "[p]art of the cost associated with Plaintiffs' transaction was related to the benefits promised under Defendant's terms of service and policies. Because Plaintiffs paid for the Samsung Galaxy Express, they have suffered an actual loss of money in not receiving benefits Plaintiffs paid for." ¶ 108. It is not clear what this means, but it does not state a plausible UCL standing theory. The FAC does not suggest that Ginsberg's phone failed to work in any way, or that Ginsberg has been deprived of any expected functionality or feature of the phone. Nor does he allege that he cannot access or use Google Play. Plaintiffs' only objection seems to be that Telegram remains available for download via Google Play, which they view as contrary to Google's content moderation policies. ¶¶ 106-08. Even accepting that for the sake of argument, there is no credible—or even coherent—theory of how the mere presence of the Telegram app in Google Play could have affected the monetary value of a Samsung phone. The fact that a given app is available in Google Play could not possibly make a piece of third-party hardware less valuable than it would have been had the app been removed. Plaintiffs cannot establish a UCL injury by incanting a conclusory allegation of monetary harm that defies logic and common sense. *Cf. Birdsong*, 590 F.3d at 961 ("The plaintiffs' alleged injury in fact is premised on the loss of a 'safety' benefit that was not part of the bargain to begin with.").

That is all the more so given that Plaintiffs do not allege any link between Google's alleged failure to remove the Telegram app and Ginsberg's actual use of either his phone or Google Play. Indeed, Ginsberg does not suggest that he ever even downloaded the app via Google Play (or otherwise), much less that he used his phone to access or view objectionable content on the app. Plaintiffs similarly do not claim that if Google had removed the app from Play, that

1    would have made it inaccessible through Ginsberg's phone. Nor could they, as Google Play is just

2    one of several ways to download mobile apps for use in the Android operating system. In short,

3    the value of Ginsberg's phone has nothing to do with the Telegram app. And given that, the app's

4    availability through Google Play has no plausible connection, much less a direct causal link, to

5    the economic injury Plaintiffs claim to have suffered.

6           In *Coffee*, this Court dispatched a similarly baseless UCL claim. There, the plaintiffs

7    allegedly purchased virtual currency while playing games downloaded from Google Play. *Coffee*,

8    2021 WL 493387, at *9. They alleged that Google should have removed those apps from Play

9    under its content-moderation policies. The Court found no economic injury: "Plaintiffs do not

10   explain how their purchases of virtual currency resulted in economic loss. . . . Nor do Plaintiffs

11   allege . . . 'that they were deprived of an agreed-upon benefit in purchasing' the virtual currency .

12   . . . 'If one gets the benefit of his bargain, he has no standing under the UCL.'" *Id.* (citations

13   omitted). This case is even easier. The plaintiffs in *Coffee* actually paid money to Google, which

14   they spent in connection with the allegedly unlawful apps that they downloaded through Google

15   Play. Here, Plaintiffs purchased nothing from Google—and they do not even claim to have

16   downloaded or used the Telegram app, much less spent money to do so. There is nothing

17   resembling monetary injury here. *See, e.g.*, *Hall*, 158 Cal. App. 4th at 857 (affirming dismissal of

18   UCL claim where plaintiff "did not allege [defendant's] acts of alleged unfair competition caused

19   him to lose money or property"); *Backhaut v. Apple., Inc.*, 74 F. Supp. 3d 1033, 1048 (N.D. Cal.

20   2014) (no UCL injury where plaintiffs failed to allege that "Apple's actions affect[ed] the actual

21   functionality of their Android devices" or that they "overpaid for their Apple devices in reliance

22   on misrepresentations, omissions, or other wrongful conduct by Apple").

23        **B.      Plaintiffs Have No Viable Claim for Negligent Infliction of Emotional Distress**

24          Plaintiffs also fail to state a viable claim for negligent infliction of emotional distress.

25   Under California law, "[n]egligent infliction of emotional distress is not an independent tort; it is

26   the tort of negligence to which the traditional elements of duty, breach of duty, causation, and

27   damages apply." *Ess v. Eskaton Props.*, 97 Cal. App. 4th 120, 126 (Cal. App. 2002); *accord*

28   *Huggins v. Longs Drug Stores Cal., Inc.*, 6 Cal. 4th 124, 129 (Cal. 1993). Specifically, "[a] prima

1  facie case of negligent infliction of emotional distress requires: (1) duty; (2) breach; (3) severe

2  emotional distress; [and] (4) actual and proximate cause.'" *Wanetick v. Mel's of Modesto, Inc.*,

3  811 F. Supp 1402, 1408 (N.D. Cal. 1992) (citing *Carney v. Rotkin, Schmerin and McIntyre*, 206

4  Cal. App. 3d 1513, 1524 (1988)). Here, Plaintiffs fail to allege either an applicable duty or

5  proximate causation.[1]

6              1.   Plaintiffs Fail to Allege An Applicable Duty

7          A claim for negligent infliction of emotional distress often turns on the "determination of

8  the duty issue," which is a question of law. *Ess*, 97 Cal. App. 4th at 126. Plaintiffs devote a single

9  boilerplate allegation to the question of duty: "Because Ambassador Ginsberg purchased [the

10  Samsung Galaxy Express phone], Google owes a duty of reasonable care to ensure that their [sic]

11  services are not used as a means to inflict religious and racial intimidation."[2] ¶ 73. This

12  conclusory allegation fails as a matter of law. The California Supreme Court has expressly

13  rejected the existence of a general duty of reasonable care to prevent emotional distress. *See*

14  *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 984 (1993) ("[T]here is no duty to avoid

15  negligently causing emotional distress to another, and . . . damages for emotional distress are

16  recoverable only if the defendant has breached some other duty to the plaintiff.").

17  _____

18      [1] The lack of duty and proximate causation are the most obvious defects in Plaintiffs' claim

19  for negligent infliction of emotional distress. In addition, they have equally failed to state each of

20  the other elements. Plaintiffs cite no harm or emotional distress caused to CSW as an

21  organization, and so the claim fails as to CSW for that additional reason. The FAC adds no

22  allegations that could possibly establish emotional distress on behalf of an organization. Given

23  Section 230 and Plaintiffs' obvious failure to allege a duty of care or proximate causation, the

24  Court need not reach these other issues to dispose of Plaintiffs' claim.

25      [2] The FAC reads in relevant part: "Because Ambassador Ginsberg purchased ***Apple's iPhone***,

26  Google owes a duty of reasonable care to ensure that their services are not used as a means to

27  inflict religious and racial intimidation." ¶ 73 (emphasis added). This appears to be an erroneous

28  copying of the corresponding allegation in Plaintiffs' nearly identical complaint against Apple.

1     Nor has Plaintiff identified a specific legal duty on which to base his negligence claim. To

2     the extent that Plaintiff tries to assign Google a duty of care as the operator of Google Play, such

3     a claim would fail as a matter of law. In *Dyroff*, the Ninth Circuit expressly held that a website

4     providing a forum for users to post and receive material did not owe its users a duty of care. 934

5     F.3d at 1100-01. That case arose after a website's notification to one user about another user's

6     heroin-related post allegedly led to an illegal drug transaction and the death of one of the users

7     from a drug overdose. *Id.* at 1095. The Court of Appeals explained that "[n]o website could

8     function if a duty of care was created when a website facilitates communication, in a content-

9     neutral fashion, of its users' content" and expressly "decline[d] to create such a relationship." 934

10     F.3d at 1101; *see also Doe No. 14 v. Internet Brands, Inc.*, 2016 U.S. Dist. LEXIS 192144, at *14

11     (C.D. Cal. Nov. 14, 2016) (concluding that the website operator owed no duty to warn members

12     of the website). Just so here: Plaintiffs cannot allege a duty on Google's part merely based on its

13     operation of a platform that makes third-party apps available for download.

14     *Dyroff* forecloses Plaintiffs' negligence claim. Indeed, Plaintiffs' threadbare allegation of

15     duty is even weaker than the one rejected in *Dyroff* because the alleged relationship between

16     Plaintiffs and Google is even more attenuated. Whereas the user in *Dyroff* actually used and

17     posted to the website at issue, Plaintiffs here do not claim that they ever downloaded Telegram

18     from Google Play or viewed content on Telegram, much less that Google did anything to bring

19     the app or its content to their attention. All Google is alleged to have done is provide "content-

20     neutral functions"—namely, making a broad array of apps available on Google Play, including

21     Telegram. *Dyroff*, 934 F.3d at 1100.

22     Because Plaintiffs fail to allege a relevant duty of care, the negligent infliction of

23     emotional distress claim fails as a matter of law. *See, e.g.*, *Carter v. Rasier-CA, LLC*, 2017 WL

24     4098858, at *5 (N.D. Cal. Sept. 15, 2017), *aff'd*, 724 F. App'x 586 (9th Cir. 2018) (dismissing

25     claim for negligent infliction of emotional distress based on lack of duty of care); *Clark v. Cty. of*

26     *Tulare*, 755 F. Supp. 2d 1075, 1092 (E.D. Cal. 2010) (same); *see also Beckman v. Match.com,*

27     *LLC*, 2017 WL 1304288, at *3 (D. Nev. Mar. 10, 2017), *aff'd*, 743 F. App'x 142 (9th Cir. 2018)

28     (dismissing negligence claim and finding that Match.com had no duty to warn of dangers on the

1  website, because there was no "special relationship" between the website and its users); *accord*

2  *Herrick v. Grindr, LLC*, 306 F. Supp. 3d 579, 598 (S.D.N.Y. 2018), *aff'd*, 765 F. App'x 586 (2d

3  Cir. 2019) (dismissing negligent misrepresentation claim against Grindr app on a similar basis).

4  2.  <u>Plaintiffs Fail to Allege Proximate Causation</u>

5  Even apart from the lack of a duty, Plaintiffs have no viable allegation of proximate

6  causation. Plaintiff does not allege that Google was responsible for any of the third-party content

7  posted on Telegram that distressed him. Instead, the allegations are all about third-party content

8  on a third-party app that was available for download in Google Play. The FAC asserts in

9  conclusory terms that Google's decision to keep Telegram on the Play Store caused Ginsberg to

10  suffer emotional distress, including alleged "fear of religious violence" based on content found on

11  Telegram. ¶¶ 84, 88. But this purported "injury . . . is too attenuated from Defendants' alleged

12  conduct to meet the proximate causation requirement." *Wanetick*, 811 F. Supp at 1408

13  (dismissing claim for negligent infliction of emotional distress). As explained above in

14  connection with Plaintiffs' UCL claim (*supra*, pp. 8-11), Plaintiffs fail to draw any connection

15  between Telegram's presence on Google Play and Ginsberg's alleged injury. Ginsberg does not

16  claim that he ever downloaded the Telegram app from Google Play or even used the app to view

17  the third-party content that caused him distress. In short, insofar as Ginsberg allegedly suffered

18  emotional distress from the content that was available on Telegram, that distress had nothing to

19  do with Google's choices about whether the app would be available for download in Google Play.

20  Apart from that, the FAC does not—and could not—suggest that Google's decision about

21  the Telegram app would have changed the nature of the user-generated content appearing on the

22  app or Ginsberg's exposure to such content. *See* ¶ 30. Even if Google had removed Telegram

23  from Play, all of the content that allegedly caused Ginsberg emotional distress would still have

24  been accessible through the app and could have been accessed by Ginsberg or third parties in

25  other ways (for instance, downloading onto a desktop computer or downloading the app from a

26  different app platform or website). For this reason as well, Google's alleged failure to remove the

27  app from Play bore no causal connection to Ginsberg's purported emotional distress. Without a

28

1  basis for asserting either a duty of care or proximate causation, Plaintiffs cannot allege that

2  Google negligently inflicted emotional distress on Ginsberg.

3  **III.      PLAINTIFFS SHOULD NOT BE GIVEN FURTHER LEAVE TO AMEND**

4          Plaintiffs' FAC—filed after Google first previewed its arguments in a letter to Plaintiffs

5  and *after* it moved to dismiss the original Complaint—added only a handful of token allegations.

6  *See* Ex. 1 (comparison showing amendments in First Amended Complaint ("FAC") relative to

7  original complaint). Despite being fully aware of Google's arguments, Plaintiff's amendments did

8  nothing to address Section 230, much less to offer new facts that might provide a basis for

9  escaping that immunity. Nor do the amendments change the fact that Plaintiffs have no remotely

10  plausible theory of economic loss or causation sufficient for UCL standing and that, as a matter of

11  law, Google owed no legal duty to Plaintiffs. The FAC thus represents Plaintiffs' best effort to

12  state a case, and they apparently have nothing more to add. Any further amendment would be

13  futile. For all these reasons, and given that Section 230 protects "not merely from ultimate

14  liability, but from having to fight costly and protracted legal battles," the Court should not give

15  Plaintiffs further leave to amend. *Roommates*, 521 F.3d at 1175.

16                                  **CONCLUSION**

17          Plaintiffs' FAC should be dismissed with prejudice.

18

19                                          Respectfully submitted

20  Dated:  July 13, 2021                    WILSON SONSINI GOODRICH & ROSATI
                                             Professional Corporation
21

22                                          By:  ___*/s/ Lauren Gallo White*_____
                                                 Lauren Gallo White
23                                               lwhite@wsgr.com

24                                          *Attorneys for Defendant*
                                            GOOGLE LLC
25

26

27

28