Keith Altman (SBN 257309)
The Law Office of Keith Altman
33228 West 12 Mile Road, Suite 375
Farmington Hills, Michigan 48334
Telephone: (516) 456-5885
keithaltman@kaltmanlaw.com
*Attorneys For Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| **AMBASSADOR MARC GINSBERG and COALITION FOR A SAFER WEB,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**GOOGLE LLC.,**<br><br>**Defendant.** | CASE NO.:  5:21-cv-00570-BLF<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>Date: December 16, 2021<br>Time: 9:00AM<br>Place: Courtroom 3, 5th Floor<br>Before: Judge Beth Labson Freeman |

**PLEASE TAKE NOTICE** that on December 16, 2021, at 9:00AM, in the United States District Courthouse, Courtroom 3, 5th Floor, 280 South 1st Street, San Jose, California 95113, before the Honorable Beth Labson Freeman, Plaintiffs Marc Ginsberg, and Coalition for a Safer Web ("Plaintiff") hereby move this

Court to deny Defendant Google's Motion to Dismiss Plaintiff's First Amended Complaint (ECF 23).

Plaintiffs' motion is based upon this Notice of Motion and Motion; the Memorandum of Points and Authorities in support thereof; the Proposed Order filed concurrently herewith; the pleadings, records, and papers on file in this action; oral argument of counsel; and any other matters properly before the Court.

## STATEMENT OF REQUESTED RELIEF

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and the authorities herein contained within Plaintiff's brief, Plaintiff requests that the Court dismiss Defendant's Motion to Dismiss Plaintiff's First Amended Complaint.

## STATEMENT OF ISSUES

1.      Whether Section 230 of the Communications Decency Act ("CDA"), 47 U.S.C. § 230(c)(1), bars Plaintiffs' claims.

2.      Whether Plaintiffs' First Amended Complaint should otherwise be dismissed under Rule 12(b)(6) for failure to state a claim.

## FACTUAL & PROCEDURAL BACKGROUND

Plaintiff Marc Ginsberg is a former Ambassador and the founder of Coalition for a Safer Web, an organization with the aim of combatting the role

that social media companies play in facilitating the activities of terrorist and extremist groups.  ¶ 8.  (Citations to "¶ _" are to the corrected FAC. ECF No. 19). Google is a major technology company providing a multitude of services, including the curation of apps on its digital "storefront", referred to as The Google Play Store. ¶ 19.    As the creator and sole curator of The Google Play Store, Google propounds rules that govern material that Google allows on its platform. ¶ 26. Such policies and guidelines include the Developer Program Policy and the User Generated Content policies ("Google's Guidelines"). ¶ 93

In particular, Google's guidelines contain specific provisions that prohibit hate speech and terroristic content from being hosted on "The Google Play Store". These provisions state as follows:

***Hate Speech***: *We don't allow apps that promote violence or incite hatred against individuals or groups based on race or ethnic origin, religion, disability, age, nationality, veteran status, sexual orientation, gender, gender identity, or any other characteristic that is associated with systemic discrimination or marginalization. Apps which contain EDSA (Educational, Documentary, Scientific, or Artistic) content related to Nazis may be blocked in certain countries, in accordance with local laws and regulations.*

- *Here are examples of common violations: Content or speech asserting that a protected group is inhuman, inferior or worthy of being hated.*
  - *Apps that contain hateful slurs, stereotypes, or theories about a protected group possessing negative characteristics (e.g. malicious, corrupt, evil, etc.), or explicitly or implicitly claims the group is a threat.*
  - *Content or speech trying to encourage others to believe that people should be hated or discriminated against because they are a member of a protected group.*

○ *Content which promotes hate symbols such as flags, symbols, insignias, paraphernalia or behaviors associated with hate groups.*

***Terrorist Content:*** *We do not permit terrorist organizations to publish apps on Google Play for any purpose, including recruitment. We don't allow apps with content related to terrorism, such as content that promotes terrorist acts, incites violence, or celebrates terrorist attacks. If posting content related to terrorism for an educational, documentary, scientific, or artistic purpose, be mindful to provide enough information so users understand the context. Id.*

Google has full managerial discretion to remove any app from The Google Play Store that violates Google's guidelines. ¶ 96. Indeed, in January of 2021, Google banned the app, Parler for violating their guidelines.[1]  It is thus clear that Google propounds their guidelines, not as suggestions or advisory statements, but as binding rules that apps must comply with or risk deletion from The Google Play Store.

Telegram is a messaging app that is currently hosted on The Google Play Store. ¶ 28.  Since its launch in 2013, Telegram has become infamous because it is known to have been used by terrorist and extremist groups to plan and coordinate acts of violence. ¶ 48.  In particular, Telegram is a haven for white supremacists to encourage and plan acts of racist and anti-Semitic violence,

---

[1] https://techcrunch.com/2021/01/08/parler-removed-from-google-play-store-as-apple-app-store-suspension-reportedly-looms/

including attacks on activists during Black Lives Matter protests in the summer 2020. ¶ 55-62.  This terroristic material violates not only Google's guidelines, but also violates California Penal Code § 422.6.  ¶ 50, 97.

Since Telegram was founded in 2013, there have been no shortage of media reports on the role that Telegram plays in fomenting extremist violence. ¶ 48. Ambassador Ginsberg and CSW have reached out directly to Sundar Pichai, the CEO of Google, in an attempt to highlight the extent of the danger posed by Telegram. ¶ 47.  Despite these efforts, Telegram continued to be available on The Google Play Store when it was used to plan and coordinate the events that led to the January 6th Capital riots, an event that caused Ambassador Ginsberg serious concerns for his safety as a resident of Washington D.C. ¶ 82.  Furthermore, as a Jewish man, Ambassador Ginsberg has been forced to live in a state of apprehension due to his fear of having religiously motivated violence perpetrated against him due to anti-Semitic hate fomented on Telegram. ¶ 83.  Despite having full knowledge that Telegram continues to violate both Google's guidelines and California Penal Code § 422.6, Google continues to allow Telegram to remain active on The Google Play Store. ¶ 85.  Plaintiffs initiated the instant case in order to prevent Google from continuing to allow Telegram to be a readily accessible

platform on The Google Play Store for those who wish to use the app to commit extremist violence.

Plaintiffs filed their initial complaint On January 25, 2020.  ECF No. 1. Google filed a motion to dismiss the original complaint on April 22, 2021. ECF No. 14. Rather than oppose the motion to dismiss, the Plaintiffs filed an amended complaint on June 8, 2021. ECF No. 17; *see* Ex. 1. Plaintiffs filed a corrected amended complaint on June 11, 2021, that corrected the named party from "Google, Inc.," to "Google LLC." ECF No. 19.

## ARGUMENT

In deciding a motion under Rule 12(b)(6), a court must accept all allegations of fact in the complaint as true and draw all reasonable inferences from the allegations in favor of the plaintiff. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F. 3d 1025, 1031 (9th Cir. 2008). A complaint will not be dismissed if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.    PLAINTIFFS' CLAIMS ARE NOT BARRED BY 47 U.S.C. § 230

Defendants erroneously argue that Plaintiffs' claims are barred by 47 U.S.C. § 230(c)(1). There currently exists a three-part test used to evaluate immunity under 47 U.S.C. § 230(c)(1). "Immunity from liability exists for '(1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider.' When a plaintiff cannot allege enough facts to overcome Section 230 immunity, a plaintiff's claims should be dismissed." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100 (9th Cir. 2009). While Plaintiff does not contest the first prong, the second and third prongs do not apply to the instant case.

### A. Plaintiffs' Claims Do Not Treat Google as a Publisher.

Contrary to Defendant's assertions, Plaintiffs do not seek to treat Google as a "Publisher" within the meaning of the second prong of the *Barnes* test. A plaintiff's claim treats a defendant interactive computer service as a "publisher" for purposes of § 230 when "the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a 'publisher or speaker.'" *Barnes,* 570 F.3d at 1101-02. In other words, § 230 will bar any claim

that seeks to hold an interactive computer service liable for "publishing decisions". *Id*.

In its brief, Defendant cites numerous cases within the 9th circuit wherein a plaintiff's claims were barred by § 230 for attempting to hold an interactive computer service liable as a "publisher". In each of those cases, the "publishing" action in question was a decision by an interactive computer service to either publish or withdraw a piece of third-party content. Crucially, in each case, the plaintiffs' claims were directly premised on the allegedly objectionable nature of the third-party content itself. *Barnes*, 570 F.3d at 1098-1099 (plaintiff seeking to take down a dating profile because she was receiving unsolicited attention); *Coffee v. Google, LLC*, No. 20-cv-03901-BLF, 2021 U.S. Dist. LEXIS 26750, at *6 (N.D. Cal. Feb. 10, 2021) (plaintiff seeking to have a video game feature removed on the basis that it is addictive to children); *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1266 (9th Cir. 2016) (plaintiff attempting to hold a review service liable for a review posted by a third party).

By attempting to analogize the instant case to the aforementioned cases, Defendant attempts to mischaracterize Plaintiffs' claims as claims that treat Google as a publisher. However, unlike the above cases, Plaintiffs' claims are not premised on the nature of the third-party content involved in this case and thus

are not premised on a publishing act by Google. Plaintiffs' claims are instead premised on the existence and subsequent nonenforcement of Google's Guidelines.  ¶¶ 2-4. Specifically, Plaintiffs' claims seek to hold Google liable for failing to enforce their app guidelines prohibiting hate speech and terroristic content. ¶¶ 93.   The fact that the policies in question pertain to disallowing terroristic and hateful content does not mean that plaintiffs' claims are based on the terroristic and hateful content itself.

The 9th circuit recognizes that § 230 "does not declare 'a general immunity from liability deriving from third-party content.'" *Doe v. Internet Brands, Inc.*, 824 F.3d 846, 852 (9th Cir. 2016).   *In Barnes*, the 9th circuit held that a plaintiff's breach of contract claim under promissory estoppel did not treat Defendant Yahoo as a publisher.   *Barnes*, 570 F.3d at 1105-1107. In its reasoning, the court held that Yahoo's promise not to publish certain third-party content created a legal duty to the plaintiff which was distinct from any alleged duty arising from the nature of third-party content itself. Id at 1107.   Specifically, the Court stated: "Barnes does not seek to hold Yahoo liable as a publisher or speaker of third-party content, but rather as the counter-party to a contract, as a promisor who has breached." Id. (emphasis added). The Court thus recognized that simply because a claim is

related to a publishing act does not mean that such claim is premised on a publishing act. *Id*.

Similarly, while Plaintiffs' claims might be *related* to third-party content, they are not *premised* on it. In essence, Plaintiffs' claims seek to hold Google liable for propounding policies that purport to prohibit hateful and terroristic content but subsequently failing to enforce that policy with respect to Telegram. Plaintiffs' claims are thus squarely aimed at Google in its capacity as a proponent of policies that Google publicly claims to be bound by. It is Google's non-enforcement of the Google Guidelines, and not merely the offensive nature of third-party content on Telegram, that gives rise to Plaintiffs' claims. Therefore, Plaintiffs' claims treat Google not as a publisher of apps or content, but as the proponent of policies that Google publicly claims to be bound by.

### B. Plaintiffs' Claims Are Not Premised Purely on The Actions of Third Parties.

With respect to the third prong of the *Barnes* test, Plaintiffs' claims do not seek to hold Google liable purely for the actions of third parties. It is well established that internet companies do not enjoy § 230 immunity for features they create themselves. *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008) (en banc). In *Lemmon v. Snap, Inc.,* the 9th Circuit made it clear that this was the case even if the feature in question was

directly related to third-party content.  *Lemmon v. Snap, Inc*., 995 F.3d 1085, 1093 (9th Cir. 2021). In *Lemmon*, several young men were killed after driving at a high rate of speed while using Snapchat's "speed filter".  The parents of these young men asserted claims of Negligent Design against SnapChat. *Id*. at 1088.  The court held that the parents' claims rested solely on SnapChat's "own acts" notwithstanding the fact that the "speed filter" depended on interaction from other users for its functionality.  *Id*. at 1094.

In sum, Plaintiffs are not seeking to hold Google liable because the content posted by Telegram users is hateful and terroristic in nature.  Rather, Plaintiffs are seeking to hold Google liable because Google failed to uphold policies that Google held itself out as actively enforcing.  Thus, Plaintiff's claims are premised entirely on Google's own actions in failing to uphold the company's published Guidelines. The fact that Google's actions are related to third-party content does not change this analysis.

## II. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

### A. Plaintiff Ginsburg Has a Viable Claim for Negligent Infliction of Emotional Distress Because All Prima Facie Elements Have Been Pled.

The prima facie elements for a claim of Negligent Infliction of Emotional Distress (NIED) under California law are: 1) duty, 2) breach of duty, 3) severe emotional distress, and 4) actual and proximate cause. *Wanetick v. Mel's of Modesto, Inc.,* 811 F. Supp 1402, 1408 (N.D. Cal. 1992). Defendant claims that Plaintiff Ginsburg failed to allege an applicable duty and proximate cause (Motion to Dismiss, pages 11-14); however, the elements of duty and proximate cause are adequately pled.

1.    **Google Created a Self-Imposed Duty of Care by Drafting, Approving, and Publishing Google Play's User Guidelines.**

Under California law, there is no general duty of reasonable care to prevent emotional distress. *Potter v. Firestone Tire & Rubber Co.,* 6 Cal. 4th 965, 985. However, a person can recover damages for emotional distress if such emotional distress arises out of a defendant's breach of another legal duty. *Id.* at 985. Furthermore, the California Supreme Court has held that there need not be physical injury to recover damages for emotional distress. *Id.* at 986 ("physical injury is not a prerequisite for recovering damages for serious emotional distress").

Additionally, "[a] duty of care may arise from a voluntary undertaking, since one who affirmatively assumes a duty…must use reasonable care in discharging it." *Van Zyl v. Spiegelberg*, 2 Cal. App. 3d 367, 375. Moreover, "[a] person who is under no duty to care for or render service to another but who

voluntarily assumes such a duty, is liable to the other for injury caused by a failure to exercise ordinary or reasonable care in the performance of that assumed duty." *Browne v. Turner Construction Co*., 127 Cal. App. 4th 1334, 1346 (citing *Artiglio v. Corning Inc.*, 18 Cal. 4th 604, 613).

Here, Google voluntarily undertook the duty of enforcing its own policies when Google drafted, approved, and published Google's Guidelines. In other words, Google created a self-imposed duty to oversee and be vigilant regarding the content of the apps available on Google Play Store and to make sure the apps complied with Google's Guidelines. Defendant argues that "a website providing a forum for users to post and receive material [does] not owe its users a duty of care". (Motion to Dismiss, p. 13). However, this rule does not apply to this case. Google's breach of duty is not premised on a third-party act, but rather, Google breached its self-imposed duty to enforce its own policies and Guidelines.

Google's Guidelines establish that "[a]pps whose primary purpose is featuring objectionable [User Generated Content (USG)] will be removed from Google Play."[2] Exhibit A. Furthermore, Google's Guidelines establish that *"apps*

---

[2] Google's Guidelines also stipulate the following:

"Hate Speech: We don't allow apps that promote violence, or incite hatred against individuals or groups based on race or ethnic origin, religion, disability, age, nationality, veteran status, sexual orientation, gender, gender identity, or any other characteristic that is associated with systemic discrimination or

*that end up being used primarily for hosting objectionable UGC, or that develop*

*a reputation among users of being a place where such content thrives, will also*

*be removed from Google Play."* Exhibit C (emphasis added).

Telegram's UGC has repeatedly and systematically violated Google's

Guidelines since Telegram's launch in 2013[3]. The Telegram app often has USG

that promotes violence, incites hatred against individuals or groups based on race

and religion, and has constant assertions that different protected groups

(particularly Jewish people and African American people) are inhuman, inferior,

or worthy of being hated.   Moreover, Telegram developed a reputation among

_____

marginalization[…]Here are examples of common violations: Content or speech asserting that a protected group is inhuman, inferior or worthy of being hated.

- Apps that contain hateful slurs, stereotypes, or theories about a protected group possessing negative characteristics (e.g. malicious, corrupt, evil, etc.), or explicitly or implicitly claims the group is a threat.
- Content or speech trying to encourage others to believe that people should be hated or discriminated against because they are a member of a protected group…"

Terrorist Content: We do not permit terrorist organizations to publish apps on Google Play for any purpose, including recruitment. We don't allow apps with content related to terrorism, such as content that promotes terrorist acts, incites violence, or celebrates terrorist attacks. If posting content related to terrorism for an educational, documentary, scientific, or artistic purpose, be mindful to provide enough information so users understand the context[…]" *See* Exhibit A.

[3] Such violations include, but are not limited to:

- Generating and distributing content expressing degradation and hatred of various racial and religious groups, particularly African Americans and Jewish people.
- Generating and distributing content that contains explicit exhortations to commit violence against various racial and religious groups, particularly African Americans and Jewish people.
- Planning and recruiting participants for acts of racial and religious based terrorism.
- Planning and recruiting participants in terrorist operations aimed at undermining the institution of United States elections and overturning the results of the 2020 United States Presidential election.
- Providing logistical support for participants of acts of terrorism.

**PLAINTIFFS' OPPOSITION TO**
**MOTION TO DISMISS**
**FIRST AMENDED COMPLAINT**                                    **CASE NO. 5:21-CV-00570_BLF**

users and the public in general as being a source of objectionable content, to the point where Telegram gained the nickname "Terrorgram"[4]. Telegram's UGC and Telegram's reputation are in direct violation of Google's Guidelines and therefore Google had a duty to enforce its policies and remove Telegram from Google Play. Google has failed to enforce its Guidelines and remove Telegram form Google Play. Based on the foregoing, Defendant's argument that Plaintiff Ginsberg failed to allege an applicable duty is incorrect, and the Motion to Dismiss should be denied.

2.   **Plaintiff's Emotional Distress is a Result of Google's Failure to Enforce its own Guidelines.**

To recover for emotional distress under NIED, a Plaintiff must show that his or her distress "naturally ensued from the acts complained." *Merenda v. The Superior Court of Nevada*, 3 Cal. App. 4th 1, 5 (1992). Additionally, there must be "actual and proximate causation of the emotional distress by defendant's outrageous conduct." *Wanetick v. Mel's of Modesto, Inc.*, 811 F. Supp. 1402, 1408.

---

[4] Kaul, Ayushman, "*Terrorgram: A community built on hate*", Digital Forensic Research Lab, 04/20/2020: https://medium.com/dfrlab/terrorgram-a-community-built-on-hate-e02fd59ee329.  *See* also Bedingfield, Will, "*How Telegram became a safe haven for pro-terror Nazis*", Wired Magazine, 01/03/2020: https://www.wired.co.uk/article/hope-not-hate-telegram-nazis. *See also* Gais, Hannah; Squire, Megan, "*How an Encrypted Messaging Platform is Changing Extremist Movements*", Southern Poverty Law Center, 02/26/202: https://www.splcenter.org/news/2021/02/16/how-encrypted-messaging-platform-changing-extremist-movements.

The complaint at issue alleges that Google has proximately caused Plaintiff Ginsberg's emotional distress by failing to remove Telegram from the Google Play Store. Plaintiff Ginsberg's fear of religious violence has caused him substantial emotional harm, including depression and anxiety. As a Jewish man, Plaintiff Ginsberg is a member of a protected group that is viciously attacked by Telegram's UGC, which is in direct violation of Google's Guidelines. Plaintiff Ginsberg has been subjected to two assassination attempts due to the religious beliefs he holds, and these beliefs are widely known because of his role as a United States Ambassador. It was foreseeable to Google that, by breaching its duty to enforce its own Guidelines regarding UGC, hate speech, terrorism, and violence, Google's conduct could lead to fear of violence by individuals such as Plaintiff Ginsberg. Google's outrageous conduct of failing to enforce its own policies and allow apps that encourage people to commit heinous attacks has proximately caused Plaintiff Ginsberg's emotional distress. Thus, the Defendant's argument that Plaintiff Ginsberg failed to allege proximate cause is incorrect, and the Motion to Dismiss should be denied.

Based on the foregoing, Plaintiff Ginsberg has a viable claim for negligent infliction of emotional distress because Google breached its self-imposed duty of care by drafting, approving, and publishing Google's Guidelines and because

Google has proximately caused Plaintiff Ginsberg's emotional distress by failing to remove Telegram from the Google Play Store.

The Motion to Dismiss should be denied as to Plaintiff Ginsberg. Plaintiff CSW hereby abandons its claim of negligent infliction of emotional distress against Defendant.

## II.   VIOLATION OF THE "UNFAIR" AND "UNLAWFUL" PRONGS OF THE UCL, CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200 ET SEQ.

### A. Plaintiffs Have Standing to Bring a Claim Under UCL Because Plaintiffs Suffered Economic Injury When Plaintiffs Were Deprived an Agreed-Upon Benefit in the Purchasing of an Android-Operated Cellphone.

To have standing under UCL, a person must have suffered an economic injury (such as loss of money, property, or not receiving the benefit of their bargain) resulting from a transaction with the defendant. Cal. Bus. & Prof. Code § 17204; *Coffee v. Google, LLC,* 2021 U.S. Dist. LEXIS 26750, *26-27 ("a private person has statutory standing under the UCL only if he or she 'has suffered injury in fact and has lost money or property as a result of the unfair competition'); *see Hawkins v. Kroger Co*., 906 F.3d 763, 768 (9th Cir. 2018) ("[a] plaintiff is required to show some form of economic injury as a result of his transactions with the defendant"); *see also Johnson v. Mitsubishi Digital Elecs. Am., Inc.*, 365 F.

App'x 830, 832 (9th Cir. 2010) ("[i]f one gets the benefit of his bargain, he has no standing under the UCL").

In this case, Plaintiffs Ginsberg and CSW suffered an economic injury because Plaintiffs did not receive the full benefit of the bargain. Plaintiff Ginsberg purchased a Samsung Galaxy Express cellphone which utilizes the Android operating system, owned by Google[5]. The cost of a Samsung Galaxy Express cellphone includes the value of having the Android operating system ("Android"). The main platform for app purchases in an Android phone is Google Play, which has firm policies and Guidelines that *must* be abided, and which are part of the bargain when a consumer purchases a cellphone that uses Android. Part of the cost associated with the Plaintiffs' transaction was related to the benefits of Google Play, including the hate-speech-free apps promised under Google's Guidelines. Google has failed to deliver this part of the bargain. Thus, Plaintiffs have suffered an actual loss of money and loss of benefit of the bargain by not receiving the benefits that Plaintiffs paid for when they paid for the Samsung Galaxy Express with the Android operating system. Based on the foregoing,

---

[5] Plaintiff Ginsberg uses the Samsung Galaxy Express for personal and professional purposes related to his work for CSW, and he will be reimbursed for all phone and data costs associated with his work with CSW.

PLAINTIFFS' OPPOSITION TO
MOTION TO DISMISS
FIRST AMENDED COMPLAINT                                              CASE NO. 5:21-CV-00570_BLF

Plaintiffs have standing to bring a claim under UCL because Plaintiffs suffered economic loss.

### B.  Defendant Has Violated The "Unfair" Prong of The UCL by Misleading Consumers with Its Policies and Allowing Telegram to Remain Available on Google Play Store Despite the Violations of Google's Guidelines.

The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17200. Moreover, "false and misleading representations necessarily constitute unfair business practices within the meaning of [Cal. Bus. & Prof. Code § 17200.]" *People v. Dollar Rent-A-Car Sys.*, 211 Cal. App. 3d 119.

Google violated the "unfair" prong of the UCL by misleading Plaintiff Ginsberg into believing that Google would provide a hate-speech-and-terrorism-free product. These acts and practices were unfair because they caused Plaintiff Ginsberg to rely on the fact that Google would comply with its own policies and terms of service. As mentioned above, Google's Guidelines establish that "[a]pps whose primary purpose is featuring objectionable [USG] *will be removed* from Google Play." Exhibit A (emphasis added). Furthermore, Google's Guidelines establish that "*apps that end up being used primarily for hosting objectionable UGC, or that develop a reputation among users of being a place where such*

*content thrives, will also be removed from Google Play*." *See* Exhibit C (emphasis added). Telegram app often has USG that promotes violence, incites hatred against individuals or groups based on race and religion, and has constant assertions that different protected groups (particularly Jewish people and African American people) are inhuman, inferior, or worthy of being hated.

By publishing its Guidelines, Google knowingly continues to offer a product that is different from the one it actually provides: Google offers a product with zero tolerance for hate-speech and terrorism but fails to provide such product, because it refuses to enforce its Guidelines and remove Telegram from Google Play. Telegram developed a reputation among users, and the public in general, of being a place where objectionable content thrives to the point where Telegram gained the nickname "Terrorgram". *See* footnote 3 *supra*. Google's lack of enforcement of Google's Guidelines misleads consumers into believing that Google provides a hate-speech-and- terrorism-free product. Based on the foregoing, Defendant has violated the "unfair" prong of the UCL.

### C. Defendant Has Violated The "Unlawful" Prong of The UCL Because Google Engaged in Unlawful Business Practices.

A business act or practice is "unlawful" under the UCL if it violates any other law or regulation. Cal. Bus. & Prof. Code § 17200; *People v. McKale*, 25 Cal. 3d 626, 630 ("an unlawful business activity includes anything that can

properly be called a business practice and that at the same time is forbidden by law"); *see also Morgan v. AT&T Wireless Services, Inc.*, 177 Cal. App. 4th 1235, 1254. Furthermore, this claim is not barred by 47 USCS § 230 because § 230(e) expressly establishes that § 230 has no effect on criminal law: "Nothing in this section shall be construed to impair the enforcement of […] any other Federal criminal statute." 47 USCS § 230(e). The California Penal Code § 422.6(a) states that:

> No person, whether or not acting under color of law, shall by force or threat of force, willfully injure, intimidate, interfere with, oppress, or threaten any other person in the free exercise or enjoyment of any right or privilege secured to him or her by the Constitution or laws of this state or by the Constitution or laws of the United States [on basis of any recognized protected class such as race or religion]. Cal Pen Code § 422.6(a).

In this case, many of the Telegram users who have used the app for criminal acts (such as terrorist purposes) have downloaded the app on the Google Play Store so that they may violate California Penal Code § 422.6. Despite knowing that Telegram is being used to commit criminal acts, Google continues to allow Telegram to be downloaded from the Google Play Store. Thus, Google's conduct allows and assists the commission of criminal acts. Because Google is acquiescing to and assisting the commission of criminal acts pursuant to Cal Pen Code §

422.6(a), Google's business practice is a violation of the "unlawful" prong of the UCL.

Based on the foregoing, Defendant's Motion to Dismiss fails because Plaintiffs have standing to bring a claim under the UCL. Plaintiffs suffered economic loss, and Google violated the "unfair" and "unlawful" prongs of the UCL by misleading consumers with its policies by allowing Telegram to be downloaded despite the violations of Google's Guidelines, and by engaging in unlawful business practices.

Therefore, the Motion to Dismiss should be denied.

DATED:   November 2, 2021

/s/ *Keith Altman*
Keith Altman (SBN 257309)
The Law Office of Keith Altman
33228 West 12 Mile Road, Suite 375
Farmington Hills, Michigan 48334
Telephone: (248) 987-8929
keithaltman@kaltmanlaw.com
*Attorneys For Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 2, 2021, I served the foregoing document on all Defendants *via* electronic filing through the Court's CM/ECF electronic filing system.

/s/ *Keith L. Altman*

PLAINTIFFS' OPPOSITION TO
MOTION TO DISMISS
FIRST AMENDED COMPLAINT

CASE NO. 5:21-CV-00570_BLF