LAUREN GALLO WHITE, State Bar No. 309075
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone:   (415) 947-2000
Facsimile:   (415) 947-2099
Email: lwhite@wsgr.com

MENG JIA YANG, State Bar No. 311859
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone:   (650) 493-9300
Facsimile:   (650) 565-5100
Email: mjyang@wsgr.com

Attorneys for Defendant
GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| AMBASSADOR MARC GINSBERG and COALITION FOR A SAFER WEB,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | CASE NO.: 5:21-CV-00570-BLF<br><br>**DEFENDANT GOOGLE LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**<br><br>Hon. Beth Labson Freeman<br>Courtroom 3<br>Hearing Date:  December 16, 2021<br>Time:  9:00 a.m. |

# TABLE OF CONTENTS

**Page**

ARGUMENT ................................................................................................................................... 1

I.   SECTION 230 BARS PLAINTIFFS' STATE LAW CLAIMS .......................................... 1

II.  PLAINTIFFS FAIL TO STATE A VIABLE CLAIM FOR RELIEF ................................ 7

   A.   Plaintiffs Cannot Plausibly Establish the Economic Injury Required to
        Bring a UCL Claim .................................................................................................. 7

   B.   Ginsberg Cannot Save His Negligent Infliction of Emotional Distress Claim ........ 8

        1.   Ginsberg Fails to Allege an Applicable Duty .............................................. 8

        2.   Ginsberg Fails to Allege Proximate Causation ........................................... 10

CONCLUSION ............................................................................................................................. 11


**TABLE OF AUTHORITIES**


**Page(s)**

**CASES**

*Artiglio v. Corning, Inc.*,
    18 Cal. 4th 604 (1998) ................................................................................................ 10

*Barnes v. Yahoo!, Inc.*,
    570 F.3d 1096 (9th Cir. 2009)* ............................................................................... 2, 4, 5

*Birdsong v. Apple, Inc.*,
    590 F.3d 955 (9th Cir. 2009) ........................................................................................ 7

*Browne v. Turner Construction Co.*,
    127 Cal. App. 4th 1334 (2005) ..................................................................................... 9

*Coffee v. Google, LLC*,
    2021 WL 493387 (N.D. Cal. Feb. 10, 2021) ............................................................. 2, 8

*Columbia Sussex Mgmt., LLC v. City of Santa Monica*,
    482 F. Supp.3d 1002 (C.D. Cal. Aug. 28, 2020) ........................................................... 8

*Doe No. 14 v. Internet Brands, Inc.*,
    2016 U.S. Dist. LEXIS 192144 (C.D. Cal. Nov. 14, 2016) ........................................... 9

*Doe v. MySpace, Inc.*,
    528 F.3d 413 (5th Cir. 2008) ........................................................................................ 4

*Doe v. Twitter, Inc.*,
    2021 WL 3675207 (N.D. Cal. Aug. 19, 2021) ............................................................... 6

*Dyroff v. Ultimate Software Grp., Inc.*,
    934 F.3d 1093 (9th Cir. 2019) ...................................................................................... 9

*Fair Hous. Council v. Roommates*,
    521 F.3d 1157 (9th Cir. 2008) ...................................................................................... 2

*Frenzel v. AliphCom*,
    76 F. Supp. 3d 999 (N.D. Cal. 2014) ............................................................................ 9

*Gonzalez v. Google LLC*,
    2 F.4th 871 (9th Cir. 2021) ................................................................................... 2, 4, 6

*Johnson v. Mitsubishi Digital Elecs. Am., Inc.*,
    365 F. App'x 830 (9th Cir. 2010) .................................................................................. 7

*Klayman v. Zuckerberg*,
    753 F.3d 1354 (D.C. Cir. 2014) ....................................................................................... 4

*Lee v. City of L.A.*,
    250 F.3d 668 (9th Cir.2001) ............................................................................................ 9

*Lemmon v. Snap*,
    995 F.3d 1085 (9th Cir. 2021) ..................................................................................... 5, 6

*Van Zyl v. Spiegelberg*,
    2 Cal. App. 3d 367 (1969) ............................................................................................... 9

**STATUTES**

47 U.S.C. § 230 ................................................................................................................*passim*

47 U.S.C. § 230(c) ........................................................................................................... 4, 6

47 U.S.C. § 230(e) ................................................................................................................ 6

**RULES**

Fed. R. Civ. P. 12(b)(6) ........................................................................................................ 9

Plaintiffs' opposition brief only underscores the problems that require dismissal of their claims.

Concerning Section 230: While Plaintiffs try to pretend otherwise, their claims are unavoidably based on content created by Telegram users—content that Plaintiffs dislike or believe is unlawful. It is that third-party content that Plaintiffs claim caused them emotional distress and gives rise to Plaintiffs' assertion that Google was obliged to remove the Telegram app. Plaintiffs thus seek to hold Google liable for continuing to publish the Telegram app on its platform. Plaintiffs pretend otherwise by claiming that they seek only to require Google to enforce its own content policies, under which, Plaintiffs say, the app should be removed. But that just underscores why Section 230 applies. A claim based on Google's supposed failure to apply its content-removal policies is indistinguishable from a claim based on Google's failure to remove content. That is exactly what Section 230 forbids.

Even apart from Section 230, Plaintiffs cannot save their claims. Their UCL claim fails for lack of any plausible allegation that Plaintiffs lost "money or property" as a result of Google's supposedly unlawful failure to remove the Telegram app. Plaintiffs insist that Ginsberg did not receive the benefit of the bargain when purchasing his Samsung smartphone, but they cannot explain how the Telegram app's availability on Google Play has any bearing on the phone's monetary value. Plaintiffs' arguments about their claim for negligent infliction of emotional distress similarly miss the mark. Plaintiffs conjure a legal duty that is unpleaded and wholly unsupported by any authority. And they continue to have no plausible story about the causal link between Google's choices about what apps to allow in the Play Store and Ginsberg's alleged emotional distress. Plaintiffs' failure to meaningfully engage with these fundamental pleading deficiencies confirms that their claims fail and that any further opportunity to amend would be futile.

**ARGUMENT**

**I.   SECTION 230 BARS PLAINTIFFS' STATE LAW CLAIMS**

Google's opening brief explained that this case falls within Section 230's heartland: Plaintiffs seek to hold Google liable for publishing (i.e., failing to remove) a third-party app that

allows its third-party users to exchange messages, some of which Plaintiffs say are hateful, offensive, or threatening. Mot. to Dismiss First Amended Complaint ("Mot.") at 5-8. This case is an even easier version of this Court's recent decision in *Coffee v. Google, LLC*, which applied Section 230 to dismiss claims arising from Google's alleged failure to remove a different set of apps from the Play store. 2021 WL 493387, at *4-8 (N.D. Cal. Feb. 10, 2021).

In response, Plaintiffs do not dispute that Google provides an "interactive computer service" under Section 230. Nor do they make any serious argument that the Telegram app or the content exchanged through it is anything other than third-party content—material that Google had no role in creating or developing. Instead, Plaintiffs argue that their claim somehow does not seek to treat Google as a "publisher" of the Telegram app. Opp. at 7-10. That is incorrect: what Plaintiffs target here is quintessential publishing activity.

As the Ninth Circuit has made clear, "publication involves reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009). As such, "any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230." *Fair Hous. Council v. Roommates*, 521 F.3d 1157, 1170-71 (9th Cir. 2008); *accord Gonzalez v. Google LLC*, 2 F.4th 871, 891 (9th Cir. 2021) (claims "that Google did not do enough to block or remove content … necessarily require the court to treat Google as a publisher"); *Coffee*, 2021 WL 493387, at *6 (effort to "impose liability on Google for the content" of apps available through its Play store stemmed from "conduct that is squarely within the role of a publisher").

Plaintiffs have no meaningful answer to this controlling law. They barely mention the cases cited in Google's opening brief (including *Coffee*), other than to say that the claims here are different because they are supposedly "not premised on the nature of the third-party content involved in this case and thus are not premised on a publishing act by Google." Opp. at 8-9. That is so, according to Plaintiffs, because they seek to hold Google liable for supposedly failing to enforce its own content-moderation guidelines, under which, in their view, the Telegram app

should have been removed from the Play store. Opp. at 8-10. This effort to sidestep Section 230 does not work—for two separate reasons.

*First*, Plaintiffs' assertion that their claims are not premised on the "nature of the third-party" content available through Telegram is demonstrably untrue. Indeed, Plaintiffs devote page after page of their Amended Complaint to describing "racist and anti-Semitic" content on Telegram, walking through at least a half dozen specific posts that Plaintiffs see as particularly egregious. First Am. Compl. ("FAC") ¶¶ 42-71. It is because of such content that Plaintiffs assert (1) that Google should have removed the Telegram app from the Play store (*id.* ¶ 49); and (2) that Ginsberg suffered emotional distress because the threatening content on Telegram supposedly caused him to fear for his safety (*id.* ¶¶ 82-88). If such claims are not based on third-party content, nothing is.

That reality is only confirmed by the Opposition brief. Having insisted that their claims are not based on Telegram content (Opp. at 8-10), Plaintiffs quickly let the mask slip. Here, for example, is how Plaintiffs themselves describe their theory: "Plaintiff Ginsberg is a member of a protected group that is ***viciously attacked by Telegram's UGC*** [user-generated content], which is in direct violation of Google's Guidelines. Google's outrageous conduct of failing to enforce its own policies and ***allow apps that encourage people to commit heinous attacks*** has proximately caused Plaintiff Ginsberg's emotional distress." *Id*. at 16 (emphasis added); *see also id*. at 14 (The "Telegram app often has [UGC] that promotes violence, incites hatred against individuals or groups based on race and religion, and has constant assertions that different protected groups (particularly Jewish people and African American people) are inhuman, inferior, or worthy of being hated."). Plaintiffs cannot simultaneously pretend their claims have nothing to do with Telegram content in an effort to evade Section 230, only to rely on that very content to defend their claims on the merits. In short, no matter how Plaintiffs now try to spin it, their claims are inexorably rooted in allegations about the nature of third-party content that was supposedly made available through Google's Play service.

*Second*, Plaintiffs' suggestion that they evade Section 230 by seeking to hold Google liable for allegedly not applying its content-removal policies is erroneous. There is no meaningful

difference—much less a legal distinction—between a claim that faults an online publisher for failing to remove objectionable content and one that faults it for failing to enforce its policies for removing objectionable content. Both claims target the "very essence of publishing"—"making the decision whether to print or retract a given piece of content." *Gonzalez*, 2 F.4th at 892 (quoting *Klayman v. Zuckerberg*, 753 F.3d 1354, 1359 (D.C. Cir. 2014), *aff'd*, 753 F.3d 1354, *cert. denied*, 574 U.S. 2012 (2014)). Indeed, virtually any claim protected by Section 230 could be relabeled as Plaintiffs do here. But that does not change the nature of the claim or the fact that it impermissibly imposes liability for publishing decisions. A claim that a service provider is liable for publishing defamatory content is not saved from immunity merely because the service provider prohibits defamatory content. A claim (like the one rejected by the Ninth Circuit in *Gonzalez*) that Google is liable for publishing terrorist content does not evade Section 230 if framed as a claim that Google failed to enforce its policies against terrorist content. *Gonzalez*, 2 F.4th at 891-99.

*Barnes* makes that clear. The Ninth Circuit explained that, in applying Section 230, "what matters is not the name of the cause of action" but instead "whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another." 570 F.3d at 1101-02. Applying that principle, *Barnes* rejected a very similar gambit. That case arose from Yahoo's alleged failure to remove a harassing user profile created by the plaintiff's ex-boyfriend. Recognizing that a claim directly seeking to hold Yahoo liable for publishing the profile would be barred, Barnes argued that although Yahoo "may have had no initial responsibility to act," once it agreed and actually undertook to remove it, it had to do so reasonably. *Id*. at 1102. "According to Barnes, this makes the undertaking, not the publishing or failure to withdraw from publication, the source of liability." *Id*. The court brushed aside this evasion:

> [A] plaintiff cannot sue someone for publishing third-party content simply by changing the name of the theory from defamation to negligence. Nor can he or she escape section 230(c) by labeling as a "negligent undertaking" an action that is quintessentially that of a publisher.

*Id*. at 1102-03; *see also, e.g.*, *Doe v. MySpace, Inc.*, 528 F.3d 413, 420 (5th Cir. 2008), *cert. denied*, 555 U.S. 1031 (2008) (plaintiff could not escape Section 230 by accusing MySpace of

"fail[ing] to implement measures that would have prevented" an underage user from communicating with another user since that is "merely another way of claiming that MySpace was liable for publishing the communications").

The same is true here. Just as *Barnes* rejected reframing a failure-to-remove as negligent removal and *MySpace* rejected reframing a publication claim as a failure to implement security measures, Plaintiffs cannot circumvent Section 230 by recasting their claims as based on Google's alleged failure to follow its removal policies. The essence of the claim remains unchanged—and the reframing only confirms that Plaintiffs' claims boil down to Google's decision not to remove the Telegram app. Such claims seek to hold Google liable as a publisher. *See Barnes*, 570 F.3d at 1103 ("[R]emoving content is something publishers do, and to impose liability on the basis of such conduct necessarily involves treating the liable party as a publisher of the content it failed to remove.").[1]

Finally, Plaintiffs' reliance on *Lemmon v. Snap*, 995 F.3d 1085 (9th Cir. 2021), is inapposite. Opp. at 10-11. *Lemmon* addressed a design defect claim that was in no way based on the posting (or failure to remove) objectionable content. There, plaintiffs sued after a Snap user crashed his car while using a special "speed filter" to create a video. Plaintiff claimed that Snap

---

[1] To be sure (Opp. at 9-10), *Barnes* held that a *promissory estoppel* claim against Yahoo would not be barred—because it arose from a specific contractual promise to act, which the court held was distinct from publisher liability. 507 F.3d at 1106-09 (explaining that such a claim sought to treat Yahoo "as the counter-party to a contract, as a promisor who has breached"). That holding has no application here. Plaintiffs do not assert claims based on any contract or contractually enforceable promise. Nor could they: Plaintiffs do not allege a contract between the parties here, and certainly not one by which Google committed to removing the Telegram app. In claiming that Google failed to enforce its content-moderation policies (Opp. at 13-14), Plaintiffs are not seeking to hold Google to some specific promise they made to Plaintiff. They are seeking instead to impose their own views about how Google's general removal policies should apply. That is exactly what Section 230 seeks to prevent.

negligently designed the filter in ways that encouraged unsafe driving. 995 F.3d at 1092. In holding that Section 230 did not bar that claim, the Ninth Circuit explained that the plaintiffs do not fault Snap "in the least for publishing [the user's] snap." *Id*. at 1093. The claim did not turn on the content the Snap user created, much less did it seek to hold Snap liable for failing to remove that content. *Id*. at 1092-93 ("Snap's alleged duty in this case thus 'has nothing to do with' its editing, monitoring, or removing of the content that its users generate through Snapchat."). Indeed, the Court went out of its way to make clear that the plaintiffs "would not be permitted under § 230(c)(1) to fault Snap for publishing other Snapchat-user content (e.g., snaps of friends speeding dangerously) that may have incentivized [the users] to engage in dangerous behavior." *Id*. at 1093 n.4.

This is a different case. Plaintiffs do not assert a product defect claim, rather their claims are based exclusively on content posted by third parties on Telegram and seek to fault Google for allowing that content to be published. Unlike in *Lemmon*, Plaintiffs here do not claim that Google's own content or "architecture" harmed them (*id*. at 1093); instead, what harmed them is the allegedly objectionable content that Telegram users created and disseminated using that service. *Lemmon* only confirms that Plaintiffs' effort to hold Google liable for failing to remove the Telegram app is barred by Section 230. *See also, e.g.*, *Doe v. Twitter, Inc.*, 2021 WL 3675207, at *31-32 (N.D. Cal. Aug. 19, 2021) (distinguishing *Lemmon* and applying Section 230 to dismiss product liability claim because "the alleged design flaw in this case—and the harm that is alleged to flow from that flaw—is directly related to the posting of third-party content on Twitter").[2]

---

[2] Plaintiffs make one other attempt to avoid Section 230: they argue that insofar as their UCL claim is premised on an alleged violation of a California criminal statute, it is not barred because "§ 230(e) expressly establishes that § 230 has no effect on criminal law." Opp. at 21. This argument is frivolous. First, Section 230(e)'s exception, by its terms, applies only to "**Federal** criminal statute[s]," 47 U.S.C. § 230(e) (emphasis added)—not state laws like those at issue here. Second, the Ninth Circuit has expressly held that this exception "extends only to criminal prosecutions, not to civil actions based on criminal statutes." *Gonzalez*, 2 F.4th at 890.

## II. PLAINTIFFS FAIL TO STATE A VIABLE CLAIM FOR RELIEF

This Court need not go beyond Section 230 to dismiss this case. But Plaintiffs cannot save their claims on the merits either.

### A. Plaintiffs Cannot Plausibly Establish the Economic Injury Required to Bring a UCL Claim

Google's motion explained that Plaintiffs' UCL claim fails for lack of economic injury—a loss of "money or property" resulting from the alleged wrongful conduct. Mot. at 8-11. Plaintiffs have no meaningful response. They concede that there is no UCL standing if "one gets the benefit of his bargain." Opp. at 17-18 (quoting *Johnson v. Mitsubishi Digital Elecs. Am., Inc.*, 365 F. App'x 830, 832 (9th Cir. 2010)). But they continue to offer no viable theory of how they were deprived of any such benefit. Plaintiffs' theory rests on the value of Ginsberg's Samsung Galaxy Express smartphone—a phone that he does not claim to have purchased from Google. Plaintiffs do not contend that the phone was defective or did not meet his expectations. Instead, Plaintiffs rely entirely on the argument that the phone's value was somehow diminished by the fact that the Telegram app remains available in Google's Play store. Opp. at 17-19. This theory is nonsensical and does not state a basis for UCL standing.

Plaintiffs do not even try to explain—beyond parroting the conclusory and facially implausible allegations in the Amended Complaint—how it could be the case that the mere availability of a single app in an online marketplace diminishes the value of a mobile smartphone. *See* Opp. at 17-19. That is especially so given the absence of any suggestion that Ginsberg ever downloaded the Telegram app from Google Play or even accessed the app through his phone. There is simply no alleged connection between the app and the phone. Google's decision not to remove the app from the Play store could not remotely have deprived Ginsberg of the benefit of the bargain when he bought the phone (from a third party). *Cf. Birdsong v. Apple, Inc.*, 590 F.3d 955, 961 (9th Cir. 2009) ("The plaintiffs' alleged injury in fact is premised on the loss of a 'safety' benefit that was not part of the bargain to begin with."). It is telling that Plaintiffs cite not a single case supporting a UCL standing theory remotely like the one offered here.

Plaintiffs also conspicuously ignore this Court's on-point decision in *Coffee*, dismissing a UCL claim that likewise tried to hold Google liable for failing to remove certain apps from the Play store. There, the Court found no monetary injury even though the plaintiffs **actually paid money** to make purchases within apps they downloaded from Google. *Coffee*, 2021 WL 493387, at *9. That was because the plaintiffs did "not explain how their purchases of virtual currency resulted in economic loss." *Id*. This case is even easier. Having purchased nothing from Google—and having not even downloaded the app at issue or used the phone to access the app—Plaintiffs have no plausible claim of economic loss resulting from the presence of the Telegram app in Google Play. Without that, they cannot proceed under the UCL.

### B. Ginsberg Cannot Save His Negligent Infliction of Emotional Distress Claim

Google's motion explained that Ginsberg's emotional distress claim fails both because there is no legally enforceable duty of care and for lack of proximate cause.[3] Mot. at 11-15. Plaintiff offers no compelling response to either point.

#### 1. Ginsberg Fails to Allege an Applicable Duty

Plaintiff asserts that Google "voluntarily undertook the duty of enforcing its own policies when Google drafted, approved, and published Google's Guidelines." Opp. at 13. This purported duty does not appear in the Amended Complaint, which attempted to plead an emotional distress claim based solely on the theory that Google had a duty of reasonable care "[b]ecause Ambassador Ginsberg purchased" a phone running the Android operating system." FAC ¶ 73; *see* Mot. at 12. Plaintiff did not allege that Google had a duty based on the promulgation and enforcement of guidelines for content on the Play store. It is axiomatic that a plaintiff cannot amend his complaint

---

[3] The Opposition brief does not even try to defend any emotional distress claim on behalf of Plaintiff Coalition for a Safer Web. Mot. at 12 n.1. Any argument in defense of that claim on behalf of CSW is thus waived. *Columbia Sussex Mgmt., LLC v. City of Santa Monica*, 482 F. Supp.3d 1002, 1016 (C.D. Cal. 2020) (granting motion to dismiss with prejudice where plaintiffs did not oppose dismissal of their claim, because their "'[f]ailure to oppose constitut[ed] a waiver or abandonment of the issue.'") (citation omitted).

1  in a brief opposing a motion to dismiss. *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1009 (N.D. Cal. 2014); *accord Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir.2001) ("[W]hen the legal sufficiency of a complaint's allegations is tested by a motion under Rule 12(b)(6), review is limited to the complaint."). This Court need not even consider this argument based on unpleaded allegations.

But even if considered, this argument fails as a matter of law. Tellingly, Plaintiff does not cite a single case holding (or even suggesting) that a website that voluntarily adopts content-moderation guidelines thereby takes on a duty of care as to their enforcement. Nor does Plaintiff even try to respond to the directly on-point cases cited by Google that make clear that website operators have no such duty. Mot. at 13-14.  Indeed, Plaintiff's argument is foreclosed by the Ninth Circuit's holding in *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 2761 (2020), which expressly "decline[d] to create such a relationship" between websites and their users. *Id*. at 1100-01. In fact, this case is even easier than *Dyroff*, which arose from the death of an active user of the defendant's website resulting from his use of the site to set up a drug purchase. *See also Doe No. 14 v. Internet Brands, Inc.*, 2016 U.S. Dist. LEXIS 192144, at *14 (C.D. Cal. Nov. 14, 2016) (website had no duty to warn member users of risks of sexual assault). Here, as discussed, Ginsberg does not claim to have obtained or accessed the Telegram app through Google Play or to have seen any allegedly harmful content on Telegram as a result of his use of Google Play. If the websites in *Dyroff* and *Internet Brands* had no duty of care towards their actual users, there is no basis for Plaintiff here to assert that Google had a duty to a legal stranger.

The cases relied upon by Plaintiff in opposition suggest no such thing. (Opp. at 12-13) Instead, they merely incant some variation on the general and unexceptional proposition that "a duty of care may arise from a voluntary undertaking." *Van Zyl v. Spiegelberg*, 2 Cal. App. 3d 367, 375 (1969) (landowner who purposefully created a dam that diverted water onto his neighbor's property had a duty of care to prevent flooding); *Browne v. Turner Construction Co.*, 127 Cal. App. 4th 1334, 1346 (2005) (employer and subcontractor had duty to construction worker to maintain worksite safety). None of them involved online services or the promulgation of general content-moderation guidelines.

GOOGLE'S MOTION TO DISMISS REPLY        -9-        CASE NO.: 5:21-CV-00570-BLF

Google has ***not*** "voluntarily undertak[en]" a duty to protect the entire world from possible emotional distress that might be caused by third-party speech disseminated through one of the myriad of apps available via Google Play. Standing alone, the fact that Google's adoption of content standards was voluntary does not create a legal enforceable duty of care, much less one that extends to Plaintiff here. That legal truth is only confirmed by the other case Plaintiff also cites—*Artiglio v. Corning, Inc.*, 18 Cal. 4th 604, 613 (1998). There, the court affirmed the grant of summary judgment because plaintiffs failed to establish that by voluntarily taking on research into the safety of silicone implants, the defendant had any affirmative duty to those third parties in the future, remarking: "[t]he duty of a 'good Samaritan' is limited. Once he has performed his voluntary act he is not required to render aid indefinitely." *Id.* at 615.

Plaintiff has not pleaded any viable duty of care—and none exists. Ginsberg's emotional distress claim fails as a matter of law.

### 2. Ginsberg Fails to Allege Proximate Causation

Plaintiffs' effort to demonstrate proximate cause is even more anemic. Citing no authority, Plaintiff Ginsberg asserts in a conclusory fashion that "Google has proximately caused [his] emotional distress by failing to remove Telegram from [Google Play]." Opp. at 16. But this just underlines the problem. Plaintiff's purported distress comes not from the presence of the Telegram app in Google Play, but instead from certain **content** that he says third-party users of the app have disseminated. Even if that content is in fact distressing, there is no necessary or proximate link between its existence and Telegram's presence on Google Play. *See* Mot. at 14-15. As discussed above (*supra* at 7), Plaintiff does not claim to have downloaded the Telegram app from the Google Play app store or to have been exposed to content on Telegram in ways that have any actual connection to Google. Likewise, Plaintiff does not explain how Google's removal of the Telegram app would have changed what material is available on Telegram, much less Ginsberg's exposure to such content. Nor could he. The Telegram service exists independently of Google and the Play store. Even if Google had removed the app, that would not have stopped the dissemination of allegedly distressing content by Telegram's users. Simply put, Ginsberg's alleged distress at the hands of unidentified Telegram users had nothing to do with Google's choices regarding which

apps should appear on its service. The lack of proximate cause independently defeats Plaintiff's claim.

### CONCLUSION

Plaintiffs' FAC should be dismissed with prejudice.

Respectfully submitted

Dated:  November 19, 2021

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By:   /s/ Meng Jia Yang
         Meng Jia Yang
         mjyang@wsgr.com

*Attorneys for Defendant*
GOOGLE LLC