**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| AMBASSADOR MARC GINSBERG and COALITION FOR A SAFER WEB, <br><br> Plaintiffs, <br><br> v. <br><br> GOOGLE INC., <br><br> Defendant. | Case No. 21-cv-00570-BLF <br><br> **ORDER GRANTING MOTION TO DISMISS FIRST AMENDED COMPLAINT WITHOUT LEAVE TO AMEND; AND DISMISSING ACTION WITH PREJUDICE** <br><br> [Re: ECF 23] |

Plaintiffs are former United States Ambassador Marc Ginsberg ("Ambassador Ginsberg") and an organization he created, Coalition for a Safer Web ("CSW"). CSW's mission is to prevent terrorist and extremist groups from using social media platforms to further their agendas. Plaintiffs assert that such groups routinely use Telegram, an instant messaging app, to disseminate racist speech and incite violence against Jewish people and people of color. Plaintiffs seek to impose liability against Defendant Google Inc. ("Google") based on the availability of Telegram in Google's online Play Store. The operative first amended complaint ("FAC")[1] asserts claims against Google for negligent infliction of emotional distress and violations of California's Unfair Competition Law ("UCL), Cal. Bus. & Prof. Code § 17200 *et seq*.

---

[1] Plaintiffs filed two FACs, one on June 8, 2021 (ECF 17) and the other on June 11, 2021 (ECF 19). The Court's references to the "FAC" herein are to the later-filed pleading (ECF 19), as the docket entry for that pleading indicates that it is a corrected version. Unfortunately, exhibits were omitted from the later-filed FAC (ECF 19). For the sake of efficiency, the Court has considered the exhibits attached to the earlier version of the FAC (ECF 17) rather than requiring Plaintiffs to refile the exhibits.

1  Google moves to dismiss the FAC under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. The Court has considered the parties' briefing, the oral arguments presented by counsel at the hearing on January 13, 2022, and the supplemental list of cases filed by Plaintiffs on January 21, 2022 with leave of the Court.

The motion to dismiss is GRANTED WITHOUT LEAVE TO AMEND and the action is DISMISSED WITH PREJUDICE.

## I. BACKGROUND[2]

Ambassador Ginsberg has had a notable career in public service and in the public eye. He has served as a White House liaison for the Secretary of State, a Deputy Senior Advisor to the President for Middle East Policy, and a United States Ambassador to Morocco. FAC ¶ 5. He was the first Jewish United States Ambassador to an Arab country. *Id*. ¶ 7. Ambassador Ginsberg has addressed Jewish groups in the United States and throughout the Arab world on the importance of Judaism and Israel, and he is involved with a number of synagogues in Maryland, where he resides. *Id*. ¶ 6. He has been subjected to two assassination attempts due to his religious beliefs. *Id*. ¶ 7.

"Ambassador Ginsberg created the Coalition for a Safer Web to compel social media platforms to end their tolerance of anti-Semitism and their enabling of extremist groups to operate with impunity over social media." FAC ¶ 8. CSW employs Ambassador Ginsberg and reimburses him for business use of his Android smartphone, a Samsung Galaxy Express. *Id*. ¶¶ 9, 13. Ambassador Ginsberg purchases Google products in part because of the apps available through the Google Play Store. *Id*. ¶ 25.

Google requires that app developers comply with certain guidelines if they wish their apps to be available in the Play Store. *Id*. ¶ 27. Those guidelines include Google's "Developer Program Policy" and written policies regarding "User Generated Content." FAC Exhs. A, C, ECF 17. Google publishes guidelines for developers online. FAC ¶ 27. Google's Developer Program Policy advises app developers that Google does not allow: "apps that promote violence, or incite

---

[2] Plaintiffs' factual allegations are accepted as true for purposes of the Rule 12(b)(6) motion. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

hatred against individuals or groups based on race or ethnic origin, religion . . . "; "[a]pps that depict or facilitate gratuitous violence or other dangerous activities"; or "apps with content related to terrorism, such as content that promotes terrorist acts, incites violence, or celebrates terrorist attacks." FAC Exh. A.  Google's guidelines regarding User Generated Content ("UGC") requires that app developers define objectionable content in a way that complies with Google's Developer Program Policy, and prohibit such content in the app's terms of use or user policies.  FAC Exh. C. Google advises that: "[a]pps whose primary purpose is featuring objectionable UGC will be removed from Google Play," and "apps that end up being used primarily for hosting objectionable UGC, or that develop a reputation among users of being a place where such content thrives, will also be removed from Google Play." *Id*.

Plaintiffs allege that Google allows the Telegram app to be distributed through the Play Store even though the app does not comply with Google's developer guidelines and routinely is used to transmit hate speech that violates California law.  FAC ¶ 28.  Telegram is a cloud-based mobile and desktop messaging app that allows users to create private groups of up to 200,000 members, and to create public channels to broadcast to unlimited audiences. *Id*. ¶¶ 33-34. Telegram has been downloaded from the Google Play Store an estimated 500 million times worldwide. *Id*. ¶ 32.  According to Plaintiffs, Telegram "is currently the most utilized messaging app among extremists who are promoting violence in the United States," and "currently serves as the preferred Neo-Nazi/white nationalist communications channel, fanning anti-Semitic and anti-black incitement during the current wave of protests across America." *Id*. ¶¶ 48, 52.

Plaintiffs claim that Google is liable for failing to enforce its own developer guidelines and policies.  According to Plaintiffs, "Google owes a duty of reasonable care to ensure that their services are not used as a means to inflict religious and racial intimidation," and Google breached that duty "by continuing to host Telegram on the Google Play Store despite Defendant's knowledge that Telegram was being used to incite violence, including violence against African Americans and Jews." FAC ¶¶ 73, 80.  Ambassador Ginsberg claims that the use of Telegram to promote violence against Jews generally has caused him to "live in apprehension of religiously motivated violence being perpetrated against him." *Id*. ¶ 83.

3

1   Plaintiffs filed the complaint in this action on January 25, 2021 and amended their complaint as of right in response to Google's prior motion to dismiss. *See* Compl., ECF 1; FAC, ECF 19. The operative FAC asserts three claims: (1) negligent infliction of emotional distress ("NIED"); (2) violation of the unfair prong of California's UCL; and (3) violation of the unlawful prong of California's UCL. Google now brings a second motion to dismiss, directed to the FAC.

## II. LEGAL STANDARD

"Under Rule 12(b)(6), a complaint should be dismissed if it fails to include 'enough facts to state a claim to relief that is plausible on its face.'" *Hyde v. City of Willcox*, 23 F.4th 863, 869 (9th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A complaint's claims are plausible when the pleaded facts 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Hyde*, 23 F.4th at 869 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## III. DISCUSSION

Google seeks dismissal of all claims asserted by Plaintiffs. First, Google argues that it is immune from suit under Section 230 of the Communications Decency Act of 1996 ("CDA"), 47 U.S.C. § 230. Second, Google asserts that Plaintiffs lack standing to sue under the UCL. Third, Google argues that Plaintiffs have failed to allege essential elements of their NIED claim, specifically, duty and proximate cause. In opposition, Plaintiffs argue that Section 230 immunity does not apply, they have standing to sue under the UCL, and their NIED claim is adequately pled.

For the reasons discussed below, the Court concludes that Plaintiffs' claims are barred by Section 230 of the CDA, Plaintiffs have not alleged facts establishing standing to sue under the UCL, and Plaintiffs have not stated a claim for NIED.

### A. Section 230

Section 230 of the CDA "protects certain internet-based actors from certain kinds of lawsuits." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1099 (9th Cir. 2009). Under the statute, "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). "No cause of action may be brought and no liability may be imposed under any State or local law that

4

1  is inconsistent with this section." 47 U.S.C. § 203(e)(3).

2  In *Barnes*, the Ninth Circuit created a three-prong test for Section 230 immunity. *See Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097 (9th Cir. 2019) (discussing *Barnes* test). "Immunity from liability exists for '(1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider.'" *Id.* (quoting *Barnes*, 570 F.3d at 1100-01). "When a plaintiff cannot allege enough facts to overcome Section 230 immunity, a plaintiff's claims should be dismissed." *Id.*

### 1. Interactive Computer Service Provider

Under the first prong of the *Barnes* test, the Court must determine whether Plaintiffs' allegations establish that Google is an interactive computer service provider. "Websites are the most common interactive computer services." *Dyroff*, 934 F.3d at 1097; *see also Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1162 n.6 (9th Cir. 2008) ("Today, the most common interactive computer services are websites."). Plaintiffs do not dispute that Google is an interactive computer service provider.

The Court finds that the first prong of the *Barnes* test is satisfied.

### 2. Seek to Treat as a Publisher or Speaker

Under the second prong of the test, the Court must determine whether Plaintiffs' allegations show that Plaintiffs seek to treat Google as a publisher or speaker with respect to content on the Google Play Store. Google argues that Plaintiffs seek to treat it as a publisher, while Plaintiffs argue that they do not.

"In this particular context, publication generally involve[s] reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content." *Lemmon v. Snap, Inc.*, 995 F.3d 1085, 1091 (9th Cir. 2021) (internal quotation marks and citation omitted). "A defamation claim is perhaps the most obvious example of a claim that seeks to treat a website or smartphone application provider as a publisher or speaker, but it is by no means the only type of claim that does so." *Id.* "[W]hat matters is whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another." *Barnes*,

570 F.3d at 1102. A website acts as a publisher when it decides whether or not to post online material submitted for that purpose by a third party. *See Roommates*, 521 F.3d at 1170. "[A]ny activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230." *Id.* at 1170-71.

Here, Plaintiffs "seek[ ] damages and injunctive relief against Defendant Google LLC for allowing Telegram to be made available through Google's Google Play Store." FAC ¶ 1. Plaintiffs allege that "[b]y failing to remove Telegram from the Google Play Store, Defendant has proximately caused Ambassador Ginsberg's emotional distress." *Id*. ¶ 88. Google's alleged activity boils down to deciding whether to exclude material (Telegram) that a third party seeks to place in the online Play Store. Thus, Plaintiffs' claims inherently require the Court to treat Google as the publisher of content provided by another.

Plaintiffs argue that their "claims are not premised on the nature of the third-party content involved in this case and thus are not premised on a publishing act by Google." Opp. at 8-9, ECF 34. Plaintiffs assert that their claims instead are premised on Google's nonenforcement of its own guidelines. *See id.* Relying on *Barnes*, Plaintiffs contend that Section 230 does not insulate Google from its own wrongful conduct in failing to enforce its guidelines.

In *Barnes*, the plaintiff's ex-boyfriend posted profiles about her on a website operated by the defendant, Yahoo!, Inc. ("Yahoo"). *See Barnes*, 570 F.3d at 1098. The profiles included nude photographs of Barnes, solicitations to engage in sexual intercourse purporting to be from her, and contact information for her. *See id*. Barnes asked Yahoo to remove the unauthorized profiles over a period of several months, but Yahoo failed to do so. *See id.* Finally, a representative of Yahoo assured Barnes that the matter would be taken care of. *See id.* at 1099. After months without word or action from Yahoo, Barnes sued Yahoo for negligence and promissory estoppel, and at that point the profiles were removed. *Id*.

The Ninth Circuit determined that Barnes' negligence claim fell within the scope of the immunity afforded to Yahoo under Section 230, but her claim for promissory estoppel did not. *See Barnes*, 570 F.3d at 1105, 1109. The negligence claim was based on Oregon law providing that one who undertakes to render services to another may be subject to liability from his failure to

6

exercise reasonable care in that undertaking. *See id.* at 1102. Barnes argued that this theory "treat[ed] Yahoo not as a publisher, but rather as one who undertook to perform a service and did it negligently." *Id*. The Ninth Circuit rejected this argument, concluding that Barnes could not "escape section 230(c) by labeling as a 'negligent undertaking' an action that is quintessentially that of a publisher." *Id*. at 1103. The *Barnes* court pointed out that the undertaking Yahoo allegedly failed to perform with due care was the removal of the profiles from its website. *See id.* The Ninth Circuit pointed out that removing or failing to remove content is the act of a publisher, and thus that a claim based on such an act is barred by Section 230. *See id.*

With respect to the promissory estoppel claim, however, the Ninth Circuit determined that Section 230 did not apply. *See Barnes*, 570 F.3d at 1109. Observing that promissory estoppel "is a subset of a theory of recovery based on a breach of contract," the Ninth Circuit concluded that "Barnes does not seek to hold Yahoo liable as a publisher or speaker of third-party content, but rather as the counter-party to a contract, as a promisor who has breached." *Id*. at 1106-07. The Ninth Circuit explained that "[c]ontract liability here would come not from Yahoo's publishing conduct, but from Yahoo's manifest intention to be legally obligated to do something, which happens to be removal of material from publication." *Id*. at 1107.

In the present case, Plaintiffs' claims are akin to the negligence claim that the *Barnes* court found to be barred by Section 230. Plaintiffs' theory is that by creating and publishing guidelines for app developers, Google undertook to enforce those guidelines with due care, and can be liable for failing to do so with respect to Telegram. As in *Barnes*, however, the undertaking that Google allegedly failed to perform with due care was removing offending content from the Play Store. "But removing content is something publishers do, and to impose liability on the basis of such conduct necessarily involves treating the liable party as a publisher of the content it failed to remove." *Barnes*, 570 F.3d at 1103. Plaintiffs in the present case do not allege the existence of a contract – or indeed any interaction – between themselves and Google. Plaintiffs do not allege that Ambassador Ginsberg purchased his smartphone from Google or that he downloaded Telegram or any other app from the Play Store. Thus, the *Barnes* court's rationale for finding that Section 230 did not bar Barnes' promissory estoppel claim is not applicable here.

7

Accordingly, the Court finds that the second prong of *Barnes* is satisfied.

### 3. Information Provided by Another Content Provider

Under the third prong of the *Barnes* test, the Court must determine whether Plaintiffs' allegations show that the published material was provided by another content provider. It is clear from the allegations of the FAC that the Telegram app was created by a third party, and that the alleged hate speech posted on Telegram also was created by third parties. FAC ¶¶ 29, 56-67.

Plaintiffs argue that the third *Barnes* prong is not met because their "claims do not seek to hold Google liable purely for the actions of third parties." Opp. at 10, ECF 34. Plaintiffs' argument that their claims are grounded in Google's own wrongful conduct is addressed above under the second *Barnes* prong. The third *Barnes* prong focuses solely on who created the content at issue. Plaintiffs do not allege that Google helped to develop Telegram or created any of the online content giving rise to this lawsuit.

Plaintiffs rely on *Lemmon* in arguing that the third *Barnes* prong is not satisfied. That reliance is misplaced. In *Lemmon*, the parents of two boys who died in a high-speed car accident sued Snap, Inc., a social media provider. *See Lemmon*, 995 F.3d at 1087. The boys had been using Snapchat's "Speed Filter" shortly before the crash. *See id.* at 1088. Many Snapchat users try to reach 100 MPH, take a photo or video with the Speed Filter, and then share it on Snapchat. *See id.* at 1089. Some users suspect or believe that Snapchat will reward them for doing so. *See id.* The plaintiffs alleged that Snapchat's Speed Filter encouraged their sons to drive at dangerous speeds and thus caused the boys' deaths through its negligent design. *See id.* at 1088. The Ninth Circuit held that the plaintiffs' negligent design claim – "a common products liability tort" – was not barred by Section 230, because the plaintiffs did not seek to hold Snap liable for its conduct as a publisher or speaker, but for its conduct as products manufacturer and designer. *See id.* at 1092.

As an initial matter, *Lemmon* does not speak to the question presented by the third *Barnes* prong, whether the content at issue was created by a third party. Moreover, Plaintiffs in the present case do not allege a products liability claim or any other claim that would implicate the rationale of *Lemmon*.

Accordingly, the Court finds that the third *Barnes* prong is satisfied.

####  4. Conclusion Re Section 230

Based on the facts alleged in the FAC, the Court finds that Google is entitled to Section 230 immunity. Accordingly, the motion to dismiss is GRANTED as to all claims in the FAC.

Even if Section 230 did not apply, Plaintiffs' claims are subject to dismissal on other grounds, discussed as follows.

### B. UCL – Claims 2 and 3

Claims 2 and 3 assert violations of California's UCL. Google asserts that Plaintiffs' UCL claims are subject to dismissal for lack of statutory standing. Plaintiffs contend that they have alleged statutory standing under the UCL.

The UCL prohibits an individual or entity from engaging in any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "Each prong of the UCL is a separate and distinct theory of liability." *Birdsong v. Apple, Inc.*, 590 F.3d 955, 959 (9th Cir. 2009). A private person has statutory standing under the UCL only if he or she "has suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204.

Claim 2 is for violation of the unfair prong and Claim 3 is for violation of the unlawful prong. Both claims center on Ambassador Ginsberg's purchase of an Android smart phone. The FAC alleges that "Ambassador Ginsberg purchased and uses a Samsung Galaxy Express for personal and professional purposes related to his work for CSW," and that "Ambassador Ginsberg is to be reimbursed for all phone and data costs associated with his work with CSW." FAC ¶ 102. Plaintiffs claim that "[a] portion of the cost of the Samsung Galaxy Express was related to the benefits provided under the terms of service and policies of Google." *Id.* ¶ 103. Plaintiffs allegedly were "deprived of a key benefit of the purchase and use of the Samsung Galaxy Express" by Google's allegedly unfair business practice of failing to follow its own policies and guidelines for developers. *Id.* ¶¶ 105-07. Google allegedly "has violated the 'unfair' prong of the UCL by not following their own policies and allowing Telegram to be downloaded despite the aforementioned violations of Google's guidelines." *Id.* ¶ 105. And, by continuing to allow Telegram to be downloaded from the Google Play Store, Google allegedly aids and abets

1  commission of criminal acts in violation of the unlawful prong of the UCL. *Id.* ¶ 119.

2  Google asserts that Plaintiffs' allegations are insufficient to establish the requisite

3  economic harm, citing *Birdsong*. In *Birdsong*, the Ninth Circuit addressed the economic injury

4  requirement for UCL standing in the context of a putative class action claim based on an alleged

5  defect in Apple, Inc.'s iPod product. *See Birdsong*, 590 F.3d at 961. The iPod allegedly could

6  produce sounds as loud of 115 decibels and therefore posed an unreasonable risk of noise-induced

7  hearing loss to users. *See id.* at 957-58. The plaintiffs claimed that the iPods' inherent risk of

8  hearing loss reduced the value of the iPods and deprived them of the full benefit of their bargain

9  because they could not "safely" listen to music. *See id.* at 961. The Ninth Circuit held that:

> [The plaintiffs] have not alleged that they were deprived of an agreed-upon benefit in purchasing their iPods. The plaintiffs do not allege that Apple made any representations that iPod users could safely listen to music at high volumes for extended periods of time. In fact, the plaintiffs admit that Apple provided a warning against listening to music at loud volumes. The plaintiffs' alleged injury in fact is premised on the loss of a 'safety' benefit that was not part of the bargain to begin with.

*Id.*

In the present case, Plaintiffs have not alleged facts showing that Google's compliance with its developer guidelines was an agreed-upon benefit of the phone purchase transaction. Plaintiffs do not allege that Ambassador Ginsberg purchased the phone from Google, so no such agreement could have been reached at the point of sale. Plaintiffs point to Google's guidelines for app developers who distribute apps through the Play Store. However, Plaintiffs do not allege any basis for Ambassador Ginsberg's apparent belief that Google's enforcement of those guidelines was part of his bargain with whomever he purchased the smartphone from. Consequently, Plaintiffs have not plausibly alleged that Google's alleged failure to enforce its guidelines for app developers, that is, failure to remove Telegram from the Play Store, caused Plaintiffs to suffer economic injury.

At the closing of the hearing, the Court granted Plaintiffs leave to file case citations supporting their position on the UCL claims by January 21, 2022. On that date, Plaintiffs filed a list of three cases: *Coffee v. Google, LLC*, No. 20-CV-03901-BLF, 2021 WL 493387 (N.D. Cal. Feb. 10, 2021); *Hawkins v. Kroger Co.*, 906 F.3d 763, 768 (9th Cir. 2018); and *Johnson v.*

1  *Mitsubishi Digital Elecs. Am., Inc.*, 365 F. App'x 830, 832 (9th Cir. 2010). *See* List of Requested
2  Cases, ECF 44. All three cases were cited in Plaintiffs' opposition brief and were considered by
3  the Court prior to the hearing. None of the cases helps Plaintiffs here. In *Coffee*, this Court held
4  that the plaintiffs had failed to allege economic injury arising from the purchase of virtual
5  currency, and thus lacked standing to pursue their UCL claims, where they received all the "Lapis
6  Crystals" and "dragon stones" for which they paid. *Coffee*, 2021 WL 493387, at *9. This Court
7  held that "'If one gets the benefit of his bargain, he has no standing under the UCL.'" *Id*. (quoting
8  *Johnson v. Mitsubishi Digital Elecs. Am., Inc.*, 365 F. App'x 830, 832 (9th Cir. 2010)). In
9  *Johnson*, quoted in *Coffee*, the Ninth Circuit concluded that the plaintiff had failed to establish the
10 requisite economic injury for UCL standing where he "sought the best 1080p television available
11 at the time, for the best price," and "[t]he record show[ed] that he got the benefit of his bargain."
12 *Johnson*, 365 F. App'x at 832. Nothing in *Coffee* or *Johnson* supports Plaintiffs' assertion that
13 they have alleged the requisite economic injury to pursue UCL claims in this case.

14 In *Hawkins*, the Ninth Circuit held that the plaintiff had UCL standing where she alleged
15 that she relied on a misrepresentation on a product label and would not have bought the product
16 without the misrepresentation. *See Hawkins*, 906 F.3d at 768-69. Plaintiffs in the present case
17 have not alleged a labeling claim or any other claim based on fraudulent misrepresentation. While
18 Plaintiffs allege that Google failed to enforce its guidelines for developers, they do not allege that
19 those guidelines constituted fraudulent misrepresentations. Nor could they do so, as the guidelines
20 govern Google's relationship with app developers, not with the general public. Plaintiffs do not
21 allege that Google promised Android owners that the Google Play Store would be free of hate
22 speech.

23 In conclusion, the Court finds that Plaintiffs have failed to allege facts demonstrating that
24 they suffered an economic injury as a result of Google's allegedly unfair practice of failing to
25 enforce its guidelines for app developers. For that reason, the motion to dismiss is GRANTED as
26 to Claims 2 and 3.

27     **C.**      **NIED – Claim 1**
28 Claim 1 is for NIED. "[T]he negligent causing of emotional distress is not an independent

11

tort but the tort of negligence." *Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc.*, 48 Cal. 3d 583, 588 (1989) (internal quotation marks and citation omitted). "The traditional elements of duty, breach of duty, causation, and damages apply." *Id*. (internal quotation marks and citation omitted).

"[B]usiness entities cannot recover emotional distress damages." *Geragos & Geragos Fine Arts Bldg., LLC v. Travelers Indem. Co. of Connecticut*, No. 2:20-cv-04427-RGK-JPR, 2020 WL 4048504, at *3 (C.D. Cal. July 20, 2020) (citing *Templeton Feed & Grain v. Ralston Purina Co.*, 69 Cal. 2d 461, 468 (1968)). Accordingly, the Court considers Plaintiffs' NIED claim only with respect to Ambassador Ginsberg.

Google argues that Plaintiffs have not alleged facts establishing a duty or causation. The Court agrees.

### 1. Duty

Under California law, there is no general duty of reasonable care to prevent emotional distress. *See Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 985 (1993). A duty of reasonable care "may be imposed by law, be assumed by the defendant, or exist by virtue of a special relationship." *Id*. Plaintiffs allege that "[b]ecause Ambassador Ginsberg purchased Apple's iPhone [*sic*], Google owes a duty of reasonable care to ensure that their services are not used as a means to inflict religious and racial intimidation." FAC ¶ 73. The Court assumes that the reference to the iPhone was a typographical error, and that Plaintiffs intended to allege that Google owes a duty of reasonable care because Ambassador Ginsberg purchased an Android smartphone. Plaintiffs allege that "Defendant breached their duty by continuing to host Telegram on the Google Play Store despite Defendant's knowledge that Telegram was being used to incite violence, including violence against African Americans and Jews." *Id*. ¶ 80. As Google points out, however, the Ninth Circuit has held that "[n]o website could function if a duty of care was created when a website facilitates communication, in a content-neutral fashion, of its users' content." *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1101 (9th Cir. 2019). Accordingly, Google does not owe a general duty to the public bases on its operation of the Play Store.

1    In their opposition, Plaintiffs articulate a different basis for their assertion of a duty,
2  arguing that Google assumed a legal duty of care by drafting and publishing guidelines for app
3  developers. Plaintiffs has not cited, and the Court has not discovered, any authority for the
4  proposition that Google's publication of guidelines for its app developers creates an enforceable
5  duty to any purchaser of an Android device. Accordingly, even if this theory were alleged in the
6  NIED claim, the Court would conclude that Google's developer guidelines do not establish a duty
7  of care to Plaintiffs.

### 2. Causation

Moreover, Plaintiffs have not alleged facts showing that Google's alleged failure to enforce its developer guidelines caused Ambassador Ginsberg's alleged emotional distress. The Court understands Plaintiffs' theory to be: Ambassador Ginsberg is a Jewish person in the public eye; he lives in apprehension of religiously motivated violence being directed against him; Telegram is used by extremist and terrorist organizations to incite violence against Jewish persons; and therefore Google's failure to remove Telegram from the Play Store has caused Ambassador Ginsberg to suffer emotional distress. While the Court is sympathetic to Ambassador Ginsberg's apprehensions regarding religiously motivated violence, the alleged connection between Google's conduct and Ambassador Ginsberg's emotional distress is too attenuated to satisfy the causation element.

Accordingly, the motion to dismiss is GRANTED as to Claim 1.

### D. Leave to Amend

Having determined that Plaintiff's claims are subject to dismissal, the Court must decide whether leave to amend is warranted. Leave ordinarily must be granted unless one or more of the following factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, and (5) futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (discussing *Foman* factors).

The Court finds no undue delay (factor 1) or bad faith (factor 2). The Court has not previously issued an order identifying the deficiencies in Plaintiffs' claims (factor 3), and at this

early stage in the litigation granting further opportunity to amend would not impose undue prejudice on Google (factor 4).

The Court nonetheless concludes that leave to amend is not warranted because amendment would be futile (factor 5). It is clear from the FAC that Plaintiffs' claims are barred by Section 230 of the CDA, that Plaintiffs lack statutory standing under the UCL, and that the facts of this case do not give rise to liability for NIED. Plaintiffs have given no indication, either in their opposition brief or during oral argument, that they could allege additional facts to cure these deficiencies. To the contrary, Plaintiffs clearly have set forth the facts upon which their claims are based. In the view of the Court, those facts simply do not give rise to a viable claim against Google.

Based on its determination that amendment would be futile, the motion to dismiss is GRANTED WITHOUT LEAVE TO AMEND.

**IV. ORDER**

(1) Google's motion to dismiss the FAC is GRANTED WITHOUT LEAVE TO AMEND as to all claims; and

(2) The action is DISMISSED with prejudice.

Dated: February 18, 2022

_____
BETH LABSON FREEMAN
United States District Judge